[No. 30591. Department One. May 5, 1948.]

*In the Matter of the Application for a Writ of Habeas Corpus of* ROGER B. PAYNE, *Petitioner,* v. TOM SMITH, *as Superintendent of the State Penitentiary, Respondent.*[1]

*Roger B. Payne, pro se.*

*The Attorney General* and *Lucile Lomen, Assistant,* for respondent.

SCHWELLENBACH, J.—This is an original application before this court for a writ of *habeas corpus,* alleging that

[1]Reported in 192 P. (2d) 964.

petitioner is imprisoned and deprived of his liberty in the Washington state penitentiary, at Walla Walla, by virtue of a judgment and sentence issued out of the superior court of the state of Washington for Snohomish county, on December 20, 1945, after a trial and verdict of guilty by a jury; that the court did not have jurisdiction of his person at the time of the trial and sentence; because the charge of manslaughter and abortion were presented to the court and jury upon an information, and not upon an indictment of a grand jury, in contravention of the mandatory provisions of the fifth and fourteenth amendments to the constitution of the United States.

Petitioner's conviction was affirmed by this court in *State v. Payne,* 25 Wn. (2d) 407, 171 P. (2d) 227, 175 P. (2d) 494.

Section 2, chapter 256, p. 1070, Laws of 1947, Rem. Rev. Stat., § 1085-2, provides:

"In the consideration of any petition for a writ of habeas corpus by the Supreme Court, whether in an original proceeding or upon an appeal, if any Federal question shall be presented by the pleadings, it shall be the duty of the Supreme Court to determine in its opinion whether or not the petitioner has been denied a right guaranteed by the Constitution of the United States."

Section 25, Art. I, of the state constitution, provides:

"Offenses heretofore required to be prosecuted by indictment may be prosecuted by information or by indictment, as shall be prescribed by law."

Section 26, Art. I, provides:

"No grand jury shall be drawn or summoned in any county, except the superior judge thereof shall so order."

Indictments are provided by Rem. Rev. Stat., § 2025 [P.P.C. § 129-1] *et seq.*

Rem. Rev. Stat., § 2024 [P.P.C. § 131-1], provides:

"All public offenses may be prosecuted in the superior courts by information."

Rem. Rev. Stat., § 2050 [P.P.C. § 131-2], provides:

"All informations shall be filed in the court having jurisdiction of the offense specified therein by the prosecuting

attorney of the proper county as informant; he shall subscribe his name thereto, and at the time the case is set for trial the prosecuting attorney shall file with the clerk a list of the witnesses which he intends to use at the trial and serve a copy of the same upon the defendant, and within five days thereafter the defendant shall file with the clerk and serve upon the prosecuting attorney a list of the witnesses which the defendant intends to use at the trial. Either party may add such additional names at any time before trial as the court may by order permit, and the said court shall possess and may exercise the same powers and jurisdiction to hear, try, and determine all such prosecutions upon information, to issue writs and process, and do all other acts therein, as it possesses and may exercise in cases of like prosecution upon indictments."

█ It will thus be seen that a person in this state may be charged with an infamous crime and brought to trial thereon, either upon an indictment found by a grand jury or upon an information filed by the prosecuting attorney.

The fifth amendment to the constitution of the United States provides:

"No person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property without due process of law; nor shall private property be taken for public use without just compensation."

Section 1 of the fourteenth amendment to the constitution of the United States provides:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

*Hurtado v. California,* 110 U. S. 516, 28 L. Ed. 232, 4 S. Ct. 111, was an appeal from a conviction and sentence by a California court, upon a trial based on an information, rather than upon an indictment by a grand jury. In affirming the conviction, the United States supreme court held:

"According to a recognized canon of interpretation, especially applicable to formal and solemn instruments of constitutional law, we are forbidden to assume, without clear reason to the contrary, that any part of this most important amendment is superfluous. The natural and obvious inference is, that in the sense of the Constitution, 'due process of law' was not meant or intended to include, *ex vi termini,* the institution and procedure of a grand jury in any case. The conclusion is equally irresistible, that when the same phrase was employed in the Fourteenth Amendment to restrain the action of the States, it was used in the same sense and with no greater extent; and that if in the adoption of that amendment it had been part of its purpose to perpetuate the institution of the grand jury in all the States, it would have embodied, as did the Fifth Amendment, express declarations to that effect. Due process of law in the latter refers to that law of the land which derives its authority from the legislative powers conferred upon Congress by the Constitution of the United States, exercised within the limits therein prescribed, and interpreted according to the principles of the common law. In the Fourteenth Amendment, by parity of reason, it refers to that law of the land in each State, which derives its authority from the inherent and reserved powers of the State, exerted within the limits of those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions, and the greatest security for which resides in the right of the people to make their own laws, and alter them at their pleasure.

" 'The Fourteenth Amendment' [as was said by Mr. Justice Bradley in *Missouri v. Lewis,* 101 U. S. 22-31] 'does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies. Great diversities in these respects may exist in two States separated only by an imaginary line. On one side of this line there may be a right of trial by jury, and on the other side no such right. Each State prescribes its own modes of judicial proceeding.' . . .

"It follows that any legal proceeding enforced by public authority, whether sanctioned by age and custom, or newly devised in the discretion of the legislative power, in furtherance of the general public good, which regards and preserves these principles of liberty and justice, must be held to be due process of law."

"Tried by these principles, we are unable to say that the substitution for a presentment or indictment by a grand jury of the proceeding by information, after examination and commitment by a magistrate, certifying to the probable guilt of the defendant, with the right on his part to the aid of counsel, and to the cross-examination of the witnesses produced for the prosecution, is not due process of law. It is, as we have seen, an ancient proceeding at common law, which might include every case of an offence of less grade than ⁣a felony, except misprision of treason; and in every circumstance of its administration, as authorized by the statute of California, it carefully considers and guards the substantial interest of the prisoner. It is merely a preliminary proceeding, and can result in no final judgment, except as the consequence of a regular judicial trial, conducted precisely as in cases of indictments."

In *Gaines v. Washington*, 277 U. S. 81, 72 L. Ed. 793, 48 S. Ct. 468, in ruling on a writ of error to a judgment of the supreme court of Washington, the United States supreme court said:

"Another question raised on behalf of the defendant concerns the filing of the information for murder by the prosecuting attorney. Prosecution by information instead of by indictment is provided for by the laws of Washington. This is not a violation of the Federal Constitution. *Hurtado v. California*, 110 U. S. 516."

In the recent case of *Bute v. Illinois*, 333 U. S. 640 (decided April 19, 1948), the United States supreme court said:

"The cases turn 'upon the meaning of 'due process of law' under the Fourteenth Amendment in relation to the assistance of counsel for the defense of the accused in state criminal trials such as these. In *Powell v. Alabama*, 287 U. S. 45, this Court granted relief in a group of capital cases which demonstrated the essential need for applying the full force of the Fourteenth Amendment to the invalidation of purportedly valid judgments rendered in a state court under the circumstances there shown. Those and other less

extreme cases have well illustrated the kind of service to the cause of justice which can be rendered by this Court in thus giving effect to the Fourteenth Amendment.

" 'The due process of law clause in the Fourteenth Amendment does not take up the statutes of the several States and make them the test of what it requires; nor does it enable this Court to revise the decisions of the state courts on questions of state law. What it does require is that state action, whether through one agency or another, shall be consistent with the fundamental principles of liberty and justice which lie at the base of all our civil and political institutions and not infrequently are designated as "law of the land." Those principles are applicable alike in all the States and do not depend upon or vary with local legislation'. *Hebert v. Louisiana,* 272 U. S. 312, 316-317.

" 'This court has never attempted to define with precision the words "due process of law," nor is it necessary to do so in this case. It is sufficient to say that there are certain immutable principles of justice which inhere in the very idea of free government which no member of the Union may disregard, as that no man shall be condemned in his person or property without due notice and an opportunity of being heard in his defence.' *Holden v. Hardy,* 169 U. S. 366, 389-390.

"The foregoing statements were referred to with approval in *Powell v. Alabama, supra,* at pp. 67, 71-72.

"The present case, on the other hand, illustrates equally well the kind of judgments by a state court that should not be invalidated as lacking in the due process of law required by the Fourteenth Amendment. This is so, although the procedure followed, in 1938, by the state court in the instant cases, as to counsel for the accused might not have satisfied the practice then required of a federal court in the case of comparable federal crimes. The Fourteenth Amendment, however, does not say that no state shall deprive any person of liberty without following the *federal* process of law as prescribed for the federal courts in comparable federal cases. It says merely 'nor shall any State deprive any person of life, liberty, or property, without due process of law; . . .' This *due* process is not an equivalent for the process of the federal courts or for the process of any particular state. It has reference rather to a standard of process that may cover many varieties of processes that are expressive of differing combinations of historical or modern, local or other juridical standards, provided they do not conflict with the 'fundamental principles of liberty

and justice which lie at the base of all our civil and political institutions. . . .' *Hebert v. Louisiana, supra,* at p. 316. This clause in the Fourteenth Amendment leaves room for much of the freedom which, under the Constitution of the United States and in accordance with its purposes, was originally reserved to the states for their exercise of their own police powers and for their control over the procedure to be followed in criminal trials in their respective courts. It recognizes that differences arise naturally between the procedures in the state courts and those in the federal courts.

"One of the major contributions to the science of government that was made by the Constitution of the United States was its division of powers between the states and the Federal Government. The compromise between state rights and those of a central government was fully considered in securing the ratification of the Constitution in 1787 and 1788. It was emphasized in the 'Bill of Rights,' ratified in 1791. In the ten Amendments constituting such Bill, additional restrictions were placed upon the Federal Government and particularly upon procedure in the federal courts. None were placed upon the states. On the contrary, the reserved powers of the states and of the people were emphasized in the Ninth and Tenth Amendments. The Constitution was conceived in large part in the spirit of the Declaration of Independence which declared that to secure such 'unalienable Rights' as those of 'Life, Liberty and the pursuit of Happiness . . . Governments are instituted among Men, deriving their just powers from the consent of the governed, . . .' It sought to keep the control over individual rights close to the people through their states. While there have been modifications made by the states, the Congress and the courts in some of the relations between the Federal Government and the people, there has been no change that has taken from the states their underlying control over their local police powers and state court procedures. They retained this control from the beginning and, in some states, local control of these matters long antedated the Constitution. The states and the people still are the repositories of the 'powers not delegated to the United States by the Constitution, nor prohibited by it to the States, . . .' The underlying control over the procedure in any state court, dealing with distinctly local offenses such as those here involved, consequently remains in the state. The differing needs and customs of the respective states and even of the respective

communities within each state emphasize the principle that familiarity with, and complete understanding of, local characteristics, customs and standards are foundation stones of successful self-government. Local processes of law are an essential part of any government conducted by the people. No national authority, however benevolent, that governs over 130,000,000 people in 48 states, can be as closely in touch with those who are governed as can the local authorities in the several states and their subdivisions. The principle of 'Home Rule' was an axiom among the authors of the Constitution. After all, the vital test of self-government is not so much its satisfactoriness weighed in the scales of outsiders as it is its satisfactoriness weighed in the scales of 'the governed.' While, under the Constitution of the United States, the Federal Government, as well as each state government, is at bottom a government by the people, nevertheless, the federal sphere of government has been largely limited to certain delegated powers. The burden of establishing a delegation of power to the United States or the prohibition of power to the states is upon those making the claim. This point of view is material in the instant cases in interpreting the limitation which the Fourteenth Amendment places upon the processes of law that may be practiced by the several states, including Illinois. In our opinion this limitation is descriptive of a broad regulatory power over each state and not of a major transfer by the states to the United States of the primary and pre-existing power of the states over court procedures in state criminal cases.

"Until the taking effect of the Fourteenth Amendment in 1868, there was no question but that the states were free to establish their own court procedures. This freedom included state practice as to the assistance of counsel to be permitted or assigned to the accused for his defense in state criminal cases. Because the Constitution of the United States, during nearly 80 formative years, thus permitted each state to establish, maintain and accustom its people to that state's own forms of 'due process of law,' a substantial presumption arises in favor of, rather than against, the lawfulness of those procedures and in favor of their right to continued recognition by the Federal Government as 'due process of law.' While such a presumption does not arise in favor of any practice against which the Fourteenth Amendment was particularly directed, there is no reason to feel that, in 1868, such Amendment was particularly directed against the practice now before us."

The state of Washington has set up a comprehensive procedure covering the charging and trial of a person accused of crime. The accused is accorded every safeguard possible to insure to him a knowledge of the crime charged, and a fair and impartial trial. We are convinced that this procedure does not conflict with the "fundamental principles of liberty and justice which lie at the base of all our civil and political institutions . . ." and that it does constitute "due process of law."

The writ will be denied.

MALLERY, C. J., MILLARD, ROBINSON, and HILL, JJ., concur.

June 8, 1948. Petition for rehearing denied.