**STATE of Tennessee, Appellee,**

v.

**Vernon W. NEWSOME and Harden Jenkins, III, Appellants.**

Court of Criminal Appeals of Tennessee, at Nashville.

Sept. 2, 1987.

Permission to Appeal Denied by Supreme Court Dec. 28, 1987.

Al Cocke (At Trial), J. Paul Newman (On Appeal), Asst. Public Defenders, Nashville, for Newsome.

Owen B. Stratvert, Nashville, for Jenkins.

W.J. Michael Cody, Atty. Gen. & Reporter, William Barry Wood, Asst. Atty. Gen., David Komisar, Asst. Dist. Atty. Gen., Nashville, for appellee.

## OPINION

JAMES C. BEASLEY, Special Judge.

After an eight-day jury trial, Vernon W. Newsome and Harden Jenkins III were

each convicted of robbery with a deadly weapon and three counts of aggravated rape. The trial judge assessed punishment as to each defendant at thirty-five (35) years for armed robbery and forty (40) years for each of the aggravated rape convictions. The rape sentences were ordered to be served concurrently with each other but consecutive to the robbery.

The defendants raise numerous issues in this appeal, some singly and some jointly. Although there is no challenge to the sufficiency of the evidence, we believe a summary of the pertinent facts will aid our discussion of the issues presented.

The State's proof shows that at approximately 3:00 a.m. on November 9, 1984, Cordellia Harris was visiting in her mother's home at 578—16th Avenue North in Nashville. After hearing loud talking including a statement, "where is the money," Ms. Harris looked out the window and saw two male blacks with a black female. The shorter man was holding a knife or razor to the female's neck. When she saw the men drag the woman across the parking lot into an alley and heard screaming from that area, Ms. Harris called the police.

Several Metro police units converged on the scene in response to the "possible rape in progress" report. Officer James Polk entered the alley where he found the victim who was completely nude. He spotted two shadows running from that point and he immediately reported by radio that he had found the victim and that the suspects were running toward Jo Johnston.

While briefly talking with the victim who stated she had been raped, Officer Polk saw a subject running from the area. When the man refused to halt and after firing a warning shot, the officer fired again striking the suspect in the right buttock.

Officer Polk testified that he approached the wounded man, identified as the defendant Jenkins, and after advising him of his rights asked, "Why did you rape her?" Jenkins responded, "I didn't do it, the other guy did." The defendant then pulled a knife from his pocket and threw it on the street.

Officer Gary Clements and David Reasoner who had also responded to the call were driving west on Jo Johnston when they saw the defendant Newsome running from the chapel yard on the north side of the street. Officer Clements stated that the defendant's pants were unbuttoned and unzipped and as he ran he was attempting to fasten them. After a chase of approximately one hundred yards Newsome was apprehended and a search of his person revealed a gold ladies' wrist watch, four one-dollar bills, some change and a knife. In a later search at police headquarters, a twenty-dollar bill was found in his jeans pocket.

The victim testified that she came to the area in search of her cousin who was to assist her in acquiring some marijuana. After leaving her friend's car, she was approached by a man she identified as the defendant Newsome, who asked if she was looking for drugs. This man grabbed her and placed a knife to her neck. They were joined by the defendant Jenkins and the two men took her watch and thirty dollars consisting of a twenty, a five and some one-dollar bills. She was forced to accompany the men across the street to the back of a church where she was disrobed and raped by both men. The victim specifically described being forced to perform oral sex on Jenkins while Newsome was behind her "having sex from both ends" (vaginal and anal). She said the men then switched positions and while she performed oral sex on Newsome, the defendant Jenkins was preparing to have sex with her from behind but was prevented from doing so by the arrival of a car.

The victim made positive in-court identification of both defendants. She also identified photographs of each wearing the clothing she had described. She also identified the knives which were recovered from the defendants as well as her watch which was found on Newsome at the time of his ar-

rest. She denied any involvement in drug transactions with either defendant and stated that she did not know them but had seen Newsome before—just passing by.

Defendant Newsome claimed during his testimony that he knew the victim and had sold her drugs more than twenty times. He testified that at approximately 9:30 or 9:45 p.m. on the night in question he sold the victim fake drugs for $130 and at that time took possession of her watch as part payment. He denied the rape or robbery and said he was returning home from a neighborhood store when arrested. His reason for telling the police that he did not know Jenkins was that he knew him only as "Baby Brother."

Defendant Jenkins testified that he only knew the victim by sight. He denied robbing or raping her or seeing anyone else do so. He stated that shortly before being shot he had purchased cocaine from the victim. When the drug did not cook up right he went in search of her to get his money back. He said he found her by the "dempsey dumpster" and demanded that she return his money. He cursed her and "smacked" her in the face at which point she left in search of some money. He stood around on the street for five minutes and smoked a "joint of reefer" before the police drove up. He explained that he ran because he had a screwdriver, pliers and a knife in his possession.

At the hospital Jenkins was seen giving his mother some money including a five-dollar bill. He testified that he had this money both before and after encountering the victim.

Both defendants complain about statements or suggestions by the prosecuting attorney during voir dire.

Defendant Jenkins says that during voir dire the assistant district attorney general prefaced one question or remark with some statement having to do with the kind of favors that rape defendants and/or their attorneys would or would not want, such as young women. In Newsome's brief it is alleged that the State through its assistant district attorney made comments that implied that counsel for the defendant was using trickery in an effort to select men or exclude all women from the jury to hear the case.

These vague conclusory allegations fall far short of presenting issues for review by this Court. The record does not include a transcript of what occurred during the voir dire proceedings. We are thus asked to speculate as to what was actually said, in what context and what if any corrective action was requested and/or taken.

It is the duty of appellants to have prepared an adequate record to convey a fair, accurate and complete account of what transpired with respect to those issues that are the basis of appeal. Tenn.R.App.P. 24(b). The record does not reflect any effort by either appellant to meet this requirement beyond the mere filing of a form which included a request that the entire voir dire proceedings be transcribed. This is insufficient. Any possible error is waived by this inaction.

Both defendants next say the trial court committed reversible error in instructing the jury to consider count five of the indictment when that count had been dismissed prior to trial.

Count one of the indictment charged the defendants with robbery by the use of a deadly weapon. In counts two through five inclusive identical language was used charging aggravated rape in that the defendants forced the victim to submit to unlawful sexual penetration while they were armed with weapons.

While the transcript reflects that prior to trial count five was dismissed on the oral motion of the State, we are unable to find an order of dismissal in the record. At any rate, the trial court's charge to the jury included instructions to consider all five counts of the indictment. After the jury retired from the courtroom, the attorney for the state informed the trial judge that count five had been withdrawn and should not have been submitted.

■ Before they began deliberating the jurors were returned to open court and instructed as follows:

The Court inadvertently charged you with regard count five of this indictment. This was the Court's error and count five should not have been submitted to you. Accordingly, you need not consider count five for any purpose whatsoever.

■ We feel that any error here was cured by the prompt action of the trial judge. There is a presumption that the jury does not disregard the trial court's instructions. *Craig v. State*, 524 S.W.2d 504 (Tenn.Crim.App.1974). In order to overcome this presumption an accused must show by clear and convincing evidence that such instructions were not followed. *State v. Vanzant*, 659 S.W.2d 816 (Tenn.Crim.App.1983). The defendants have not shown and there is nothing in this record even suggesting that the jury disobeyed the court's instructions.

Furthermore there was no objection interposed by either defendant to the charge as given or to the corrective action taken. This issue is without merit.

In his first issue the defendant Jenkins complains that the trial court improperly refused to charge the jury as to the lesser included offense of assault and battery on the first count of the indictment. This count charged armed robbery committed by means of an assault. Clearly under this count assault would be a lesser included offense. *State v. Shaw*, 619 S.W.2d 546 (Tenn.Crim.App.1981).

If no evidence at all is offered as to a lesser included offense, there is no requirement that it be included in jury instructions. *State v. Briley*, 619 S.W.2d 149 (Tenn.Crim.App.1981). However, if there is any evidence reasonable minds could accept as to any such lesser offense, the accused is entitled to appropriate instructions regarding the lesser offense. *State v. Atkins*, 681 S.W.2d 571 (Tenn.Crim.App. 1984).

While it is true that the defendant testified to an earlier encounter with the victim during which he "smacked" her in the face, he denied being present at the time she was robbed and raped. In other words the thrust of his testimony was that the "smacking" was a totally unrelated incident and that he was elsewhere when the crimes with which he was charged were committed.

■ The jury not only rejected this defense but also declined to give the defendant the benefit of the lesser offenses charged under count one, i.e., robbery and larceny from the person. Under the proof in this record, we fail to see where reasonable minds could have done otherwise. The refusal of the requested instruction was at best clearly harmless error and is not grounds for reversal.

In the next two issues the defendant Jenkins challenges the photographic lineup as being unduly suggestive and says the trial court erred in allowing an officer to relate to the jury statements made by the victim at the time she viewed that lineup.

■ It was established at the pre-trial suppression hearing that the victim had been shown an array of photographs of six black males which were arranged in a manila folder. Each man was shown in a frontal and profile view. The basis for the first complaint is that the dual photograph of Jenkins has a profile view on the left and a frontal view on the right; whereas, in the other five photographs the frontal views are all on the left and the profile views are to the right.

In denying the motion to suppress the identification the trial judge stated, "There is no earthly way I can interpret the fact that the defendant's face is perhaps in a different way on one aspect than do other persons in this lineup, that by itself, in and of itself, would cause this lineup to be suggestive in any way. There is no basis for such conclusion." The evidence supports the trial court in that decision.

While our examination of the photographic array fails to reveal any sugges-

tiveness therein, we have, nevertheless, looked to the totality of the circumstances surrounding the identification by the victim and find it to be reliable under the criteria set forth in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

During the trial the victim was not asked about and did not testify concerning her pre-trial identification of the defendant. Later when the State sought to prove through Detective McBride that the victim had identified Jenkins at a photographic lineup, the trial judge initially properly sustained objections to this testimony on the grounds of hearsay. Shortly thereafter he reversed himself *sua sponte* and announced to the assistant district attorney general that the testimony would be allowed. The officer then testified that the victim identified Jenkins' picture and stated, "that is him."

■ The trial judge reasoned that since this evidence had all the indicia of reliability that it should be admitted although it was admittedly hearsay. In its brief, the State contends that it was not hearsay for the detective to relate that which he observed. We do not agree. This testimony was clearly offered to establish the truth of the prior out-of-court statement and act of the victim identifying the defendant and was, as recognized by the trial judge, clearly hearsay.

In *Blankenship v. State,* 1 Tenn.Crim. App. 178, 432 S.W.2d 679 (1967), the following language was used:

> We hold that the testimony of the prosecuting witness, concerning his previous identification of the defendant, was competent.

However, the author of that opinion, Presiding Judge Mark Walker, went on to point out:

> The testimony of a third person as to a prior identification of the defendant by the victim is incompetent as original testimony, and unless the witness has been impeached, is inadmissible on the issue of identification.

Here the victim had not been impeached and it was error to admit over objection this evidence through Detective McBride.

■ We conclude, however, that given the positive in-court identification of the defendant by the victim plus the facts and circumstances connecting the defendant to these crimes, the admission of this evidence did not affect the outcome of the trial and was harmless beyond a reasonable doubt.

In his final issue, Mr. Jenkins contends that the trial court erred by not suppressing statements made by him at the time of his arrest because the State failed to prove that he knowingly and voluntarily waived his "Miranda rights."

■ After a pre-trial hearing the trial judge determined that the statement was in all respects admissible and overruled the motion to suppress. He found that the defendant had been advised of his rights and although he was apparently in some pain from the gunshot wound there was no suggestion that the pain was so overwhelming that he could not understand those rights. These findings have the weight of a jury verdict and are binding upon us when, as here, we find material evidence to support the trial judge's findings. See *State v. O'Guinn,* 709 S.W.2d 561, 565–566 (Tenn.1986). This issue is without merit.

In addition to those joint issues which we have heretofore discussed, the defendant Newsome has presented five other issues for review. First he says the trial court erred in failing to suppress "the suggestive jailhouse show-up identification of the defendant caused by deliberate, negligent police action."

The proof shows that after the victim was examined at the hospital, she accompanied Detective McBride to the police station for the purpose of obtaining a warrant. While the two of them were at the copy machine in the warrant section, two officers accompanied by the defendant entered the building and proceeded down a nearby hallway. Detective McBride testified that

he immediately stepped in front of the victim in an effort to keep her from seeing the defendant but as he did so she stated, "That is him."

In overruling the motion to suppress the identification of this defendant, the trial judge found that there was no state conduct in the staging of any sort of procedure. The record supports that conclusion. There is no showing that the police presented the defendant to the victim for pre-trial identification or even intended that she see him at that time. Under the facts shown here, we hold that the spontaneous identification of the defendant by the victim does not constitute an impermissible show-up so as to make the identification unduly suggestive or give rise to any substantial likelihood of irrepressible misidentification. See *State v. McDougle,* 681 S.W.2d 578 (Tenn.Crim.App.1984); see also *Rippy v. State,* 550 S.W.2d 636 (Tenn. 1977).

Defendant Newsome next says the trial court erred in refusing his request to review the written police report before cross-examining the officer at the suppression hearing.

Rule 26.2(a), Tenn.R.Crim.P., provides, in pertinent part, as follows:

After a witness other than the defendant has testified on direct examination, the trial court, on motion of a party who did not call the witness, shall order the attorney for the state or the defendant and his attorney, as the case may be, to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that *relates to the subject matter concerning which the witness has testified.* (Emphasis added.)

After Officer Gary Clements' direct testimony at the suppression hearing, defense counsel asked to see the officer's report. The State responded that there was no mention of any statements in the report and submitted the document to the trial judge for an in-camera inspection. After examining the report the trial judge announced that there was nothing pertinent to the officer's testimony contained therein and denied the request. The report has not been preserved in this record and there is no showing that the trial judge erred in his ruling.

Defendant Newsome also contends that the trial court erred in refusing to grant his pre-trial motion to require the State to produce any criminal records of the witnesses the State intended to call.

In overruling this motion the trial judge noted that the defense had equal access to such records. It was pointed out again by our Supreme Court in the recent case of *State v. King,* 718 S.W.2d 241 (Tenn.1986) that the State has no duty either under the Tennessee Rules of Criminal Procedure or by decisional law in this state to provide such information to the defendant. Furthermore, it appears that in this case the defense had more information than the State concerning the prior convictions and bad acts of the victim. There is no merit to this complaint.

In the next issue Newsome says the trial court erred in excluding from evidence the victim's prior criminal record concerning false reports to police.

Prior to the cross-examination of the victim, an extensive hearing was held pursuant to *State v. Morgan,* 541 S.W.2d 385 (Tenn.1976) to determine which convictions could be used for the purpose of impeaching her testimony. The defense sought to introduce evidence of the victim's prior convictions for making false reports to the police. The trial judge excluded this evidence on the grounds that these violations of a Metro ordinance were not admissible as prior convictions.

In its brief the State correctly admits that the making of false reports to the police could be admitted as specific instances of conduct or prior bad acts under *Morgan.* Also during the *Morgan* hearing below the assistant district attorney general

in arguing against admissibility as a criminal conviction pointed out that the defense might wish to inquire upon it as a prior bad act. However, from our perusal of the record we find no effort by the defendant to do so.

■ Now on appeal the defendant seeks to rely for the first time on Rule 608(b) adopted in *Morgan* as a basis for admission of this evidence. The record reflects that in the trial court the defendant urged the admissibility of this evidence on the grounds that it represented a prior conviction under Federal Rules of Evidence 609 also adopted by the Supreme Court in *Morgan v. State,* supra. Thus it appears that the trial judge was never given the opportunity to rule on its admissibility as a specific instance of a bad act. A trial judge cannot be put in error as to a matter upon which he did not rule. *Dotson v. State,* 2 Tenn.Crim.App. 388, 454 S.W.2d 174 (1970). See also *State v. Galloway,* 696 S.W.2d 364 (Tenn.Crim.App.1985).

Furthermore, we would observe that with the jury being apprised of the victim's prior convictions for robbery, shoplifting and conspiracy to conceal stolen property, it is doubtful that proof of her false reports to the police would have had much if any effect on her credibility.

In the final issue error is claimed in the failure of the trial court to declare a mistrial following testimony that the defendant refused to sign a written statement.

The record reflects that after Detective Garafola had testified concerning certain oral statements made to him by the defendant Newsome the following occurred:

Q (By Gen. Komisar) Detective, these statements that Mr. Newsome gave to you were oral statements, were they not?

A Yes, sir.

Q You asked Mr. Newsome to make a formal written statement?

A Yes.

Q Did he do that?

A No, sir.

Q What did he do?

A He said he had nothing to say, just what he had told us.

MR. COCKE: Your Honor, I would like to approach the Bench.

(Whereupon, an off-the-record discussion was held at the Bench, after which the following proceedings were had:)

THE COURT: Members of the Jury, it you heard any evidence regarding any refusal or failure to make a statement you should disregard that. The defendant has a right not to say anything at all and you should draw no inference or allow no inference to be drawn from any defendant's failure or refusal to make a statement. So if you have heard any evidence to that extent, then please disregard it and don't use it for any purpose whatsoever. All right.

■ A fair reading of what transpired here does not support the defendant's charge that this was a deliberate attempt by the State to comment to the jury that the defendant elected to exercise his constitutional right to remain silent. Clearly the defendant did not remain silent. He simply declined to have his statements put in formal written form. At any rate, the prompt, thorough instruction by the trial judge cured any possible error.

■ Likewise without merit is the defendant's claim that his discovery request was not fully complied with. He was made aware of the oral statements and of the fact that there were no written statements. His sole contention seems to be that the failure of the State to specifically tell him of the defendant's refusal to sign a written statement was a violation of the discovery rules and grounds for a mistrial. We think not. The trial court properly denied the motion for a mistrial.

Finding no reversible error as to either defendant, we affirm the judgments as entered below.

O'BRIEN and BYERS, JJ., concur.