**Vernon NEWSOME, Petitioner,**

v.

**Billy W. COMPTON, et al.,
Respondents.**

**Civ. A. No. 3:88–0320.**

United States District Court,
M.D. Tennessee,
Nashville Division.

April 25, 1988.
Opinion on the Merits June 10, 1988.

Jerry Smith, W.J. Michael Cody and Debra K. Inglis, Office of the Atty. Gen. of Tennessee, Nashville, Tenn., for respondents.

Vernon Newsome, Henning, Tenn., pro se.

## MEMORANDUM OPINION AND ORDER

NEESE, Senior District Judge.

The petitioner Mr. Vernon W. Newsome applied *pro se* for the federal writ of habeas corpus, claiming he is in the custody of the respondent-warden pursuant to the judgment of conviction of September 18, 1985 of the Criminal Court of Tennessee for its 20th judicial district (comprising Davidson County) in violation of the federal Constitution, Fifth Amendment, Right Against Self–Incrimination Clause, and Fourteenth Amendment, § 1, Right to the Due Process of the Law Clause. 28 U.S.C. §§ 2241(c)(3), 2254(a). He claims that he has exhausted his available state-remedies by having presented fairly his claims herein to the Supreme Court of Tennessee. 28 U.S.C. § 2254(b).[1]

Mr. Newsome claims herein that his federal right not to be required compulsorily to incriminate himself was infringed upon when his arresting-officer testified at his trial that he refused to make any written statements at the time of his arrest. "No person * * * shall be compelled in any criminal case to be a witness against himself * * *." Constitution, Fifth Amendment, *supra.*

Mr. Newsome claims also that his federal right to the due process was violated when his trial Court allowed improperly the victim of the crime charged to testify against him at his trial regarding her identification of him at the jail. "No State shall * * * deprive any person of * * * liberty * * * without due process of law * * *." Constitution, Fourteenth Amendment, §. 1, *supra.*

Mr. Newsome claims a further infringement upon his federal due-process rights, in that his trial-Court gave an ineffective curative instruction to the jury after an improper instruction. Improper jury-instructions do not generally form a basis for habeas-corpus relief; but, if Mr. Newsome establishes that an improper instruction resulted in a fundamental defect, which inherently resulted in a complete miscarriage of justice or an omission inconsistent with any rudimentary demands of fair procedure, habeas-corpus relief is available, even if he failed to object timely at the trial. *Brouillette v. Wood,* 636 F.2d 215, 217–218[2] (8th Cir.1980), *cert. den.,* 450 U.S. 1044, 101 S.Ct. 1766, 68 L.Ed.2d 243 (1981).

■ It not appearing plainly on preliminary consideration of the face of the applicant's petition that he is not now entitled to relief in this Court,[2] Rule 4, Rules—§ 2254 Cases, it hereby is

ORDERED that the respondent-warden file an answer conformable to Rule 5, Rules—§ 2254 Cases, within 23 days herefrom, and that a copy of the petition herein and of this order be served forthwith by the clerk of this Court by certified-mail on the respondent-warden and the attorney-general and reporter of Tennessee. Rule 4, Rules—§ 2254 Cases. The noticed slow movement of the mail provides good cause for the additional time allowed. 28 U.S.C. § 2243; Rule 81(a)(2), F.R.Civ.P.

---

1. Although the petitioner herein does not refer specifically to such Fifth or Fourteenth Amendment, *pro se* petitions are held " * * * to less stringent standards than formal pleadings drafted by lawyers * * *." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596[2], 30 L.Ed.2d 652 (1972), *reh. den.,* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972). The Court, therefore, in its discretion, interprets such petition as stating a claim thereunder.

2. Mr. Newsome also claims that: (1) his trial-Court erred in refusing to allow him to examine the arresting-officer's report; (2) his trial-Court erred in excluding improperly from evidence, the victim's prior convictions for making false police-reports; and (3) the prosecution failed to disclose the fact of his refusal to make a written statement during the discovery process. Even applying a less stringent standard, the Court cannot construe these claims as presenting a constitutional challenge to Mr. Newsome's conviction herein. They, therefore, do not establish a basis upon which habeas-corpus relief may be granted and the Court, thus, will not consider them.

Should it be the respondent's contention that the petitioner has not exhausted his available state remedies, he may limit his answer to such issue, in which event the Court will consider first the exhaustion-matter, and thereafter allow the respondent additional time in which to file a supplemental answer, addressing the merits of the petition, as may be indicated.

## ON THE MERITS

The respondent answered, *see* order herein of April 25, 1988. An evidentiary hearing is not needed, Rule 8, Rules—§ 2254 Cases; thus, this Court will dispose of the petition herein as law and justice require. *Id.*

The pertinent historic facts herein, stated by the Court of Criminal Appeals of Tennessee are:

* * * [A]t approximately 3:00 a.m. on November 9, 1984, Cordellia Harris was visiting her mother's home at 578—16th Avenue North in Nashville. After hearing loud talking including a statement, "where is the money," Ms. Harris looked out the window and saw two male blacks with a black female. The shorter man was holding a knife or razor to the female's neck. When she saw the men drag the woman across the parking lot into an alley and heard screaming from that area, Ms. Harris called the police.

Several Metro[politan Nashville/Davidson County, Tennessee] police units converged on the scene in response to the "possible rape in progress" report. Officer James Polk [,one of them,] entered the alley where he found the victim who was completely nude. He spotted two shadows running from that point and he immediately reported by radio that he had found the victim and that the suspects were running toward Jo Johnston [Avenue].

While briefly talking with the victim who stated she had been raped, Officer Polk saw a subject running from the area. When the man refused to halt and after firing a warning shot, the officer fired again striking the suspect in the right buttock.

Officer Polk * * * approached the wounded man, identified as the defendant Jenkins, and after advising him of his rights asked, "Why did you rape her?" Jenkins responded, "I didn't do it, the other guy did." The defendant then pulled a knife from his pocket and threw it on the street.

Officers Gary Clements and David Rasoner who had also responded to the call were driving west on Jo Johnston when they saw the defendant Newsome running from the chapel yard on the north side of the street. * * * [T]he [petitioner's] pants were unbuttoned and unzipped and as he ran he was attempting to fasten them. After a chase of approximately one hundred yards [the petitioner] Newsome was apprehended and a search of his person revealed a gold ladies' wrist watch, four one-dollar bills, some change and a knife. In a later search at police headquarters, a twenty-dollar bill was found in his jeans pocket.

The victim testified that she came to the area in search of her cousin who was to assist her in acquiring some marijuana. After leaving her friend's car, she was approached by a man she identified as the [petitioner] Newsome, who asked if she was looking for drugs. This man grabbed her and placed a knife to her neck. They were joined by the defendant Jenkins and the two men took her watch and thirty dollars consisting of a twenty, a five and some one-dollar bills. She was forced to accompany the men across the street to the back of a church where she was disrobed and raped by both men. The victim specifically described being forced to perform oral sex on Jenkins while Newsome was behind her "having sex from both ends" (vaginal and anal). She said the men then switched positions and while she performed oral sex on Newsome, the defendant Jenkins was preparing to have sex with her from behind but was prevented from doing so by the arrival of a car.

The victim made positive in-court identification of both [Jenkins and the petitioner]. She also identified photographs of each wearing the clothing she had described. She also identified the knives

which were recovered from the [petitioner and Jenkins] as well as her watch which was found on Newsome at the time of his arrest. She denied any involvement in drug transactions with either [the petitioner or Jenkins] and stated that she did not know them but had seen Newsome before—just passing by.

[The petitioner] Newsome claimed during his testimony that he knew the victim and had sold her drugs more than twenty times. He testified that at approximately 9:30 or 9:45 p.m. on the night in question he sold the victim fake drugs for $130 and at that time took possession of her watch as part payment. He denied the rape or robbery and said he was returning home from a neighborhood store when arrested. His reason for telling the police that he did not know Jenkins was that he knew him only as "Baby Brother."

Defendant Jenkins testified that he only knew the victim by sight. He denied robbing or raping her or seeing anyone else do so. He stated that shortly before being shot he had purchased cocaine from the victim. When the drug did not cook up right he went in search of her to get his money back. He said he found her by the "dempsey dumpster" and demanded that she return his money. He cursed her and "smacked" her in the face at which point she left in search of some money. He stood around on the street for five minutes and smoked a "joint of reefer" before the police drove up. He explained that he ran because he had a screwdriver, pliers and a knife in his possession.

*State v. Newsome,* 744 S.W.2d 911, 913–14 (Tenn.Cr.App.1987).

■ With regard to Mr. Newsome's contention, that his federal right not to be required compulsorily to incriminate himself was infringed when his arresting officer testified at his trial that he refused to have his oral statements reduced to writing, the aforenamed Court found factually as follows:

[A]fter * * * Detective Garafola had testified concerning certain oral statements made to him by the [petitioner] Newsome the following occurred:

Q. (By Gen. Komisar) Detective, these statements that Mr. Newsome gave to you were oral statements, were they not?

A. Yes, sir.

Q. You asked Mr. Newsome to make a formal written statement?

A. Yes.

Q. Did he do that?

A. No, sir.

Q. What did he do?

A. He said he had nothing to say, just what he had told us.

MR. COCKE: Your Honor, I would like to approach the Bench.

(Whereupon, an off-the-record discussion was held at the Bench, after which the following proceedings were had:)

THE COURT: Members of the Jury, i[f] you heard any evidence regarding any refusal or failure to make a statement you should disregard that. The defendant has a right not to say anything at all and you should draw no inference or allow no inference to be drawn from any defendant's failure or refusal to make a statement. So if you have heard any evidence to that extent, then please disregard it and don't use it for any purpose whatsoever. All right.

*Id.,* at 918. This Court presumes that finding to be correct, as none of the conditions of 28 U.S.C. § 2254(d), (1)–(8), is claimed by the petitioner to have been extant.

This Court finds from the foregoing historic facts that the prosecution did not attempt intentionally to comment to the jury regarding Mr. Newsome's election to remain silent. Even if this Court found that the prosecution had made such a comment intentionally, given the prompt and thorough curative instruction by the trial Court, it would be unable to find that Mr. Newsome suffered any prejudice therefrom. This issue is without merit.

■ With regard to Mr. Newsome's claim, that his federal right to the due process of the law was violated by the improper admission of the testimony of the victim regarding her identification of him at the jail, the aforenamed Court found:

[A]fter the victim was examined at the hospital, she accompanied Detective McBride to the police station for the purpose of obtaining a warrant. While the two of them were at the copy machine in the warrant section, two officers accompanied by the defendant entered the building and proceeded down a nearby hallway. Detective McBride testified that he immediately stepped in front of the victim in an effort to keep her from seeing the defendant but as he did so she stated, "That is him."

That finding is presumed correct. 28 U.S.C. § 2254(d), *supra.*

"A conviction based on identification testimony following pretrial identification violates the defendant's constitutional right to due process whenever the pretrial identification procedure is so 'impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification,' *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); because 'reliability is the linchpin' of this analysis, * * * courts have used two steps to find the use of identification testimony unconstitutional. First the court evaluates the undue suggestiveness of the preidentification encounters. If the encounters were unduly suggestive, the court evaluates the 'totality of the circumstances' to determine whether there are nevertheless sufficient independent indicia of reliability." *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir.1986).

■ The fact that the mechanics of the operations of the police were apparently not responsible for the confrontation between Mr. Newsome and the victim does not render the claim herein meritless. The Court "is obligated to review every pretrial encounter, accidental or otherwise, in order to insure that the circumstances of the particular encounter have not been so suggestive as to undermine the reliability of the witness' subsequent identification." *Green v. Loggins*, 614 F.2d 219, 223 (9th Cir.1980), quoted in *Thigpen v. Cory, supra*, at 895.

On such reviews this Court finds that the foregoing pretrial encounter was not un-

necessarily or impermissibly suggestive. The pertinent police officer in no way attempted to call the victim's attention to Mr. Newsome or in any way suggest to her that he was the man who raped and robbed her. On the contrary, the record reflects such officer attempted diligently and timely to shield the victim's view of Mr. Newsome.

The victim had ample opportunity to view her attackers while the crime was taking place. When she saw Mr. Newsome in the jail house, she made an independent, spontaneous identification of him, based upon her perception and recollection that he was one of the men who attacked her, not upon undue suggestions from the pertinent police officer. The Court is not required to go farther with its analysis, and finds that this claim is not meritorious.

■ Mr. Newsome contends also that he was denied the due process of the law when his trial Court instructed his jury inadvertently, concerning a certain count of the indictment returned against him which had been dismissed pretrial, and thereafter gave an ineffective curative instruction to such jury.

The record reflects that Mr. Newsome's trial Court did instruct his jury with respect to a previously-dismissed count of such indictment; it reflects furthermore that, as soon as the jury retired for deliberation, the prosecuting-attorney informed the trial Court that such count had been dismissed. Before the jury began its actual deliberations, the jurors were returned to the courtroom and given the following instruction by the trial Court:

The Court inadvertently charged you with regard to count five of this indictment. This was the Court's error and count five should not have been submitted to you. Accordingly, you need not consider count five for any purpose whatsoever.

It is patent that the petitioner's trial Court committed a most unfortunate error, in instructing his jury that he was charged also with a crime which had been dismissed pretrial; however, this Court finds that the subsequent and specific instruction sufficed to cure any prejudicial effect flowing

from that first erroneous instruction. Thus, there remained no fundamental defect which resulted in a complete miscarriage of justice in the petitioner's trial. *Cf. Brouillette v. Wood,* 636 F.2d 215, 217, 218, [2] (8th Cir.1980), *cert. den.,* 450 U.S. 1044, 101 S.Ct. 1766, 68 L.Ed.2d 243 (1981).

From all the foregoing, it appears the petitioner Mr. Newsome is not incarcerated in violation of his federal constitutional rights, and he hereby is

DENIED all relief. Judgment to that effect will be entered. Rule 58(1), F.R. Civ.P.

Should the petitioner give timely notice of an appeal from the judgment to be entered herein, he is authorized to proceed thereon *in forma pauperis.* Rule 24(a), F.R.App.P. Any such notice will be treated also as an application for a certificate of probable-cause, Rule 22(b), F.R.App.P., which WILL issue, because of the complexity of the legal issues implicated herein. *Id.*