IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 24, 2004 Session

# BURTON v. FINE

**Appeal from the Circuit Court for Hamilton County
Neil Thomas, III, Judge**

---

**No. E2003-01572-COA-R3-CV    Filed July 9, 2004**

---

Mrs. Burton and Mr. Fine had an automobile accident. Both sides claimed the accident was caused by the other's fault. Mr. Fine settled his claim with Mrs. Burton's liability carrier and gave Mrs. Burton a general release. Mrs. Burton's claim proceeded to trial and she asserted that the release waived Mr. Fine's defense of comparative fault. The trial judge held that it did not and approved the jury's verdict assessing the greater fault to Mrs. Burton. We affirm. We also affirm the amount of discretionary costs awarded to Mr. Fine.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed**

BEN H. CANTRELL, RETIRED JUDGE, delivered the opinion of the court in which HERSCHEL P. FRANKS, J. and D. MICHAEL SWINEY, J. concurred.

William Horton and Michael A. Anderson, Chattanooga, Tennessee, for the appellants, Elizabeth and Blake Burton.

Alaric A. Henry and Matthew Hargraves, Chattanooga, Tennessee, for the appellees, Barth M. Fine and CNA Insurance Company.

## OPINION

### I.

After an automobile accident in Hamilton County, Elizabeth Burton and her husband sued the other driver, and they also sued Continental Insurance Company (CNA), Mrs. Burton's own insurance carrier, for underinsured motorist coverage. The other driver counter-sued Mrs. Burton, and CNA found itself defending both parties, that novel position created by our

uninsured motorist statutes.

CNA settled the counter-suit and got a general release of the other driver's claims against Mrs. Burton. When Mrs. Burton's original suit proceeded to trial, Mrs. Burton moved for summary judgment on the comparative fault defense, claiming that the terms of the release precluded the other driver from raising the issue. The court overruled the motion and instructed the jury on comparative fault principles. The jury returned a verdict finding Mrs. Burton 95% at fault for the accident.

## II.

### The Effect of the Release

The relevant portions of the release given to Mrs. Burton are as follows:

In consideration for the payments referred to hereinabove, Fine hereby releases, acquits and forever discharges Elizabeth N. Burton, and husband, Blake A. Burton, their heirs and assigns, as well as Continental, its successors and assigns, and all other persons or corporations, from any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses and compensation, on account of, or in any way arising out of, any and all known and unknown personal injuries, damages and losses resulting from, or to result from, the automobile accident that occurred on June 21, 1998 on May Road in Hamilton County, Tennessee.

\* \* \*

It is further understood and agreed that this settlement is compromise of a doubtful and disputed claim, and that the payment is not to be construed as an admission of liability on the part of Elizabeth N. Burton, Blake A. Burton and/or Continental, by whom liability is expressly denied. Fine further releases and fully discharges Elizabeth N. Burton and Blake A. Burton from any and all causes of action as stated in the Complaint (or which could have been stated in the Complaint) filed by them in Hamilton County Circuit Court Cause No. 99C1142 (later consolidated with Cause No. 99C263), styled <u>Barth N. Fine and Jennifer Fine vs. Elizabeth N. Burton and Blake A. Burton</u>, and they authorize and direct their attorney, Russell King, to have entered in said cause an order dismissing their claims with full prejudice.

Both sides agree that a release is a contract and that the interpretation of a release is governed by the general rules governing the interpretation of a contract. <u>See</u>, <u>Jackson v. Miller</u>, 776 S.W.2d 115 (Tenn. Ct. App. 1989). All rules of interpretation are simply tools to arrive at the intention of the parties and to give effect to it. <u>General Const. Contractor's Assn., Inc. v. Greater St. Thomas Baptist Church</u>, 107 S.W.3d 513 (Tenn. Ct. App. 2002). One universal rule

2

requires courts to give the contract language its usual natural, and ordinary meaning.  <u>Rainey v. Stansell</u>, 836 S.W.2d 117 (Tenn. Ct. App. 1991).

In this case the things specifically mentioned in the release are "any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses and compensation...any and all known and unknown personal injuries, damages and losses" resulting from the automobile accident.  Obviously drawn by a lawyer in an attempt to cover all items for which the Burtons might potentially be liable, the release gives up all claims the Fines might have and then, for good measure, sprinkles in a few examples of the types of damages that might result from these claims.  Notably, however, the release does not mention the <u>defenses</u> that Mr. Fine may have to the Burton claims.

A defense is quite a different thing from a claim, cause of action, or demand.  We think it is significant that the Rules of Civil Procedure treat them separately.  Rule 8.01 requires a pleader to set forth the factual basis for a claim and a demand for relief.  Rule 8.02 requires a party to state in "short and plain terms his or her defenses."  A claim seeks affirmative relief from the other party, while a defense seeks to defeat that claim.  Therefore, we do not think the plain language of the release covers the defenses that had already been raised to the Burton claims.

The parties obviously knew that in all likelihood the Burton claims would have to be tried.  If Mr. Fine waived his defenses to Mrs. Burton's claims, it would essentially render him strictly liable for her injuries.  A consequence so grave as that should be plainly stated; and we think a draftsman who chose the words of the release so carefully would have plainly stated that intent if the parties had agreed to it.

## III.

### Evidence Supporting the Verdict

The Burtons assert that there is no material evidence supporting the allocation of 95% of the fault to her.  We disagree.

The accident occurred on a two lane road, just after Mrs. Burton rounded a curve to the left.  The two automobiles crashed into each other near the center line of the road.

The jury was instructed that each driver had a duty to drive with reasonable care, to maintain a safe rate of speed, to keep the automobile under control, to keep a proper lookout, to use reasonable care to avoid an accident, and to obey the traffic laws.  The charge specifically included a reference to the statute that requires drivers to drive on the right side of the roadway.

Mr. Fine testified that he saw Mrs. Burton's vehicle approaching him in his lane.  As she got closer, he determined that she was not looking at the road but was searching for something apparently lost in the seat of her car.  Mr. Fine says he blew his horn and slammed on his brakes but could not avoid the collision.

The physical evidence showed that Mr. Fine applied his brakes when his car was in his lane, but that at the point of impact, the left front wheel of his car was approximately eight inches over the center lane.  The damage to his car extended all across the front of it, which could support a conclusion that Mrs. Burton's car was well over in his lane when the collision occurred.

3

Each side presented an expert who gave an opinion about where and how the accident happened.

Mrs. Burton testified that she was in her lane and saw a green blur heading toward her. She swerved to the right but was unable to avoid the collision.

As this short recitation of the material facts demonstrates, the truth depends on which witnesses the jury believed. Since judging the credibility of the witnesses is a matter that is peculiarly within the province of the jury, this court is not in a position to review that determination. Caldwell v. Knox Concrete Products, Inc., 391 S.W.2d 5 (Tenn. Ct. App. 1964). Where the evidence is in dispute, this court must take the strongest legitimate view of all the evidence to uphold the verdict. Cole v. Arnold, 545 S.W.2d 95 (Tenn. 1977). All that is required to support a verdict is any material evidence. Benson v. Fowler, 306 S.W.2d 49 (Tenn. Ct. App. 1957). We think the verdict is supported by material evidence.

## IV.

### Juror Confusion

After beginning their deliberations, the jury sent a note to the trial judge with the following question:

> Your Honor, if we conclude both are equally at fault, is there any other consequence to the parties other than Mrs. Burton not collecting?

The court discussed the question with the lawyers and decided to bring the jury in. These proceedings followed:

> THE COURT: All right. The question I have is, "If we conclude both are equally at fault, is there any other consequence to the parties other than Mrs. Burton not collecting?".
> I will say again to you – and the reason I brought you back in is because I sort of want to get a reaction to what I say, to make sure that I've answered your question rather than simply writing it on here.
> As I indicated to you in my instructions as to the law, if the party, in this case the Plaintiff, is 50 percent or more at fault, she is not entitled to recover any of the damages that I outlined in my charge to you; medical expense, pain and suffering, loss of enjoyment of life, disability, and property damage. Likewise, her husband would not recover any damages because she would not.
> Did that cover it?
> JUROR #87: No, sir.
> THE COURT: That's the reason I brought you back in.
> JUROR #87: Your Honor, what we would like to know is what future consequence there is to either party, other than a dollar amount; for instance, insurance purposes, driving record, that sort of thing.

4

THE COURT: All right. Let me see Counsel in chambers.

At a conference in chambers, the court and the lawyers agreed that the question couldn't be answered and that the jury should be told that. In addition, the participants agreed that the jury should be told to decide the case on the evidence in the record and not to speculate about anything that had happened or might happen.

When the court returned, the following questions and answers were stated:

JUROR #57: I don't know if I should be saying some of this, but I guess I have to with everybody present. I didn't want you to think what we have written down as far as the question is that we were just trying to all come in agreement of 50/50. Okay? The question as you worded it – can he ask the question?

THE COURT: Sure.

JUROR #62: Is it the same difference if we say no to Question One[1] on the form as if we say yes to Question One and Question Two, and 50/50 as percentage?

JUROR #87: Very well put. Yeah, that will answer all the questions.

THE COURT: Well, first of all, let me say this: You all are to decide this case solely on the evidence before you. I don't want you to speculate about anything that might have happened in the past or might happen in the future. If you answer Question One no, or if you answer Questions One and Two yes, and Question Three 50/50, you do not answer Question Four. Does that help?

JUROR #87: No, sir. If we answer Question One no and Question Two yes –

THE COURT: No. If you say no, you don't get to Question Two.

---

[1] The jury verdict form contained the following:

We, the jury, unanimously answer the questions submitted by the Court as follows:

1. Do you find the defendant, Barth Fine, to be at fault? (The plaintiff has the burden of Proof.) Yes___ No___

2. Do you find the plaintiff, Elizabeth Burton, to be at fault? (The defendant has the burden of proof.) Yes___ No___

If your answer to this question is "no", you have found the defendant 100% at fault and therefore you should skip question 3 and proceed to question 4. If your answer is "yes", proceed to question 3.

3. If you have found the plaintiff and the defendant to be at fault, considering all the fault at One Hundred Percent (100%), what percentage of fault do you attribute to each of the parties?

Barth Fine _____
Elizabeth Burton _____
Total _____

If you find Elizabeth Burton to be 50% or more at fault, stop here, sign this form and return to Court. A plaintiff 50% or more at fault is not entitled to recover damages. If you find that Elizabeth Burton is less than 50% at fault, proceed to question 4.

JUROR #87: Okay.

JUROR #87: Let's try it this way. If we answer yes to both and then 50/50, will that have the same outcome as if we answer no to Question One?

THE COURT: Under either scenario that you impose, you would not make an award of any damages to the Plaintiffs for any of the elements that I have charged you. In completing your deliberations, regardless of how you answer the questions on the jury verdict form, I want you to confine yourselves to the evidence in this record and not speculate about what might happen in the future or speculate as to what might have happened in the past. Does that help? I've got some ups and downs.

JUROR #87: Yes, sir, it does.

The Burtons contend that the court should have declared a mis-trial because the jury was obviously confused as to the burden of proof and was influenced by extraneous matters like the effect of the verdict on insurance rates and driving records.

We start with the presumption that the jury understood the charge and followed the court's instructions. Cherry v. Floyd, 448 S.W.2d 444 (Tenn. Ct. App. 1969). To overcome this presumption an appellant must show clear and convincing evidence to the contrary. State v. Newsome, 744 S.W.2d 911 (Tenn. Crim. App. 1987).

The parts of the record we have reproduced in this opinion contain all the evidence bearing on this subject. We think the main thing that can be inferred from the exchanges between the court and jury is that the jury from the beginning had concluded that Mrs. Burton could not recover, either because Mr. Fine was not at fault or because Mrs. Burton's fault was more than his. Their questions reflected some concerns about something, but what was really on their minds is a matter of speculation. The trial judge did an excellent job of keeping them focused on the evidence in the record and on the decision they had to make without concerning themselves about extraneous matters. We cannot see any reason to reverse the verdict on the ground that the jury was confused.

V

**Errors in the Evidence**

Mrs. Burton also asserts that the trial judge committed reversable error in two ways: (1) In allowing evidence of the severity of Mr. Fine's injuries after holding in a pre-trial order that such evidence was inadmissible; and (2) In dis-allowing proof of Mr. Fine's prior accidents.

Prior to trial the Burtons filed a motion in limine to exclude any evidence at the trial of the injuries suffered by Mr. Fine. The court held that Mr. Fine could offer evidence that he was injured but could not offer any evidence as to the extent of his injuries or the amount of his medical expenses.

At one point in the trial, Mr. Fine was asked by his lawyer, "Now, I'm not going to get into any details of the injuries or otherwise, but you were injured, also, in this wreck, correct?"

Mr. Fine replied, "Yes, I was severely injured."

6

During his redirect examination, Mr. Fine's lawyer asked, "Was there anything that happened in the collision that affected your memory as to the time of the impact?"

Mr. Fine started to answer, "Well, I was severely injured . . ."

At that point the Burton's lawyer asked for a bench conference, which was held off the record. When the examination resumed, the subject was changed completely and there were no more references to Mr. Fine's injuries.

Assuming that the quoted questions and answers violated the court's pre-trial order, we do not think the evidence had any effect on the jury. Other exhibits in the record showed the total destruction of the automobile Mr. Fine was driving. That he survived at all was probably a source of wonder to the jury. In holding that the introduction of the forbidden evidence did not prejudice the jury, the trial judge said, "I will say that if any member of the jury does not conclude that there has been some injury to Mr. Fine after reviewing the photographs in this case, they've been living on the other side of the moon for the last century."

The introduction of inadmissible evidence is harmless error if the facts are already in the record by evidence that is otherwise competent. Love v. Smith, 566 S.W.2d 876 (Tenn. 1978); State v. Caffey, 729 S.W.2d 266 (Tenn. Crim. App. 1986). In addition, to justify a reversal it must affirmatively appear that the inadmissible evidence affected the results of the trial. Hager v. Hager, 66 S.W.2d 250 (Tenn. Ct. App. 1933). It does not appear from this record as a whole that the questions and answers about Mr. Fine's injuries had any effect on the jury.

The Burtons also complain that the trial judge would not allow them to introduce evidence that Mr. Fine had been involved in four prior accidents. They allege that in all the prior accidents, running from 1989 through 1996, Mr. Fine's car crossed the center line and crashed into another car or left the road entirely. The Burtons argue that the evidence was admissible to show habit under Rule 406 Tenn. R. Evid. or for impeachment purposes.

This issue arose prior to the trial when CNA filed a motion in limine to prevent the introduction of evidence of Mr. Fine's prior accidents. The Court granted the motion in an order containing the following language:

> The motion in limine filed on behalf of Continental Insurance Company is granted on a limited basis. Should the Defendant, Barth Fine, or any witness called to testify on his behalf put his habit or custom of driving at issue, the Plaintiffs will be entitled to impeach Mr. Fine based on his prior driving record, assuming the court finds at the time that such evidence is relevant and not unduly prejudicial.

The issue was never raised again during the trial. It does not appear from the record that the Burtons ever attempted to introduce evidence of Mr. Fine's prior driving history, and they did not make an offer of proof so that this court could judge whether the trial judge erred in granting the motion in limine. See Rule 103(a)(2) Tenn. R. Evid. Therefore, all we know is that Mr. Fine apparently had some prior accidents, but we do not know any of the circumstances or the time frame in which they occurred. Nor was the trial judge given the chance to judge whether the probative value of the evidence outweighed the prejudicial effect, as suggested in his order granting the motion in limine.

Because the substance of the evidence is not preserved in the record we cannot judge how

the Burtons may have been prejudiced by its exclusion.  We recognize that when the court grants a motion in limine a party is not required to make an offer of proof at the trial– if the substance of the evidence is apparent from the context.  See Rule 103(a)(2) Tenn. R. Evid.  That is not true here.  See State v. Robinson, 73 S.W.3d 136 (Tenn. Crim. App. 2001).  Therefore, we cannot see how the trial judge's action in granting the motion in limine prejudiced the Burtons.

## VI

### The Bad Faith and Deceptive Act Claim Against CNA

After the verdict, the Burtons sought to amend their complaint to assert a claim against CNA for bad faith and a violation of the Tennessee Consumer Protection Act.  The allegations concerning CNA appear in the following paragraph:

> This case was tried before a jury on October 8 and 9, 2002.  CNA breached its duty of good faith implied in the Plaintiffs' insurance policy by (a) settling with Mr. Fine without consent of the insured and without presenting the terms of the release to the insured's attorney for review and approval; (b) contracting with Mr. Fine to waive subrogation in order to avoid advising the jury of the true identity of the party in interest and falsely representing to the jury that Mr. Fine was counsel's client and a duty was owed to Mr. Fine to protect him from a judgment; (c) prohibiting Mr. Fine's liability carrier from paying the limits of his policy to the Plaintiffs without prejudice and (d) by agreeing with Mr. Fine's liability carrier that the limits of his policy would be used for defense costs of the uninsured motorist carrier.

The Defendants filed their opposition to the amendment, but, without granting the amendment, the court allowed the Burtons some limited discovery on the joint defense agreement executed by CNA and Mr. Fine's insuror, State Farm.  Finally, the court treated CNA's opposition to the motion to amend as a motion for summary judgment with respect to the complaint itself.

We think the trial court properly dismissed the amended complaint.  The Burtons argue that CNA, as their liability carrier, breached its duty of good faith to them by defending their claims against Mr. Fine in his name and by not revealing that fact to the jury.  But, as unorthodox as that sounds, the uninsured motorist statutes permit that unusual alignment of the parties.  Tenn. Code Ann. § 57-7-1206(a) provides that the uninsured/underinsured motorist carrier may defend "in the name of the owner and operator of the uninsured motorist vehicle or in its own name . . ."  Furthermore, this court has said, "It is perfectly clear that the statute preserves for the uninsured motorist carrier the same right of anonymity as that enjoyed by a liability insurance carrier as it defends its insured as the only named defendant."  Perkins v. McKineley, 1988 WL 132675 (Tenn. Ct. App.).  Therefore, summary judgment on this issue was properly granted.

Next the Burtons alleged that CNA had a duty to submit the terms of the settlement with Mr. Fine to them and to allow them to approve the settlement agreement.  They do not cite any

8

policy provisions or statute giving them that right, nor do they allege how they were harmed by the alleged breach of duty. Without these necessary elements of a cause of action, the trial judge cannot be faulted for granting summary judgment on that issue.

The third amended complaint also contains an allegation that CNA prevented State Farm from paying the Burtons its $50,000 policy limit without prejudice to their right to pursue the underinsured claim against Mr. Fine/CNA. The affidavits in the record, however, show that State Farm never offered to pay their limits without getting a full release on behalf of Mr. Fine. The affidavits show the opposite. State Farm would not pay their limits and leave their insured exposed to a claim that would not be covered. The joint defense agreement executed by CNA and State Farm does not give CNA the right to dictate the terms under which State Farm could settle the claims against Mr. Fine, and there is no proof that they otherwise agreed. There is no question of fact on this issue that would prevent summary judgment in favor of CNA.

Finally, the third amended complaint asserts that the joint defense agreement required State Farm to contribute its $50,000 in coverage to the payment of CNA's expenses in defending the lawsuit. The trial judge reviewed the joint defense agreement and found that no part of it required State Farm to pay CNA's expenses out of its policy limits. That finding is not attacked on appeal and it seems to us that it puts this issue behind us.

The third amended complaint alleges that CNA's acts discussed above violated the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 et seq. But since we have concluded that CNA acted properly under the provisions of the Underinsured Motorist Act, there is no factual predicate for this assertion. Therefore, the trial judge properly granted summary judgment to CNA on this issue.

## VII

### Discretionary and Post-Offer Costs

After the verdict, CNA moved on its own behalf and on behalf of Mr. Fine for the assessment of costs pursuant to Rule 54.04 and 68 Tenn. R. Civ. Pro. Although the motion refers to the costs it seeks as "discretionary", the two rules cover different things, only one of which is discretionary. Rule 54.04 allows the court, in its discretion, to award to the prevailing party the costs of court reporters, expert witnesses, interpreters, and guardians ad litem. As we have said, the award being discretionary, "a party is not automatically entitled to discretionary costs under Tenn. R. Civ. P. 54.04(2) simply because it prevailed . . . However, courts generally award discretionary costs if they are reasonable and if the prevailing party has filed a timely, properly supported motion." Scholz v. S.B. Intern, Inc., 40 S.W.3d 78 at 84 (Tenn. Ct. App. 2000).

Rule 68 covers situations where a party has turned down an offer of judgment and then receives a less favorable judgment at the trial. When that happens the rule says "the offeree shall pay all costs accruing after the making of the offer." This rule, however, refers only to costs that are usually assessed by the trial clerk. Person v. Fletcher, 582 S.W.2d 765 (Tenn. Ct. App. 1979). It does not cover deposition costs or court reporter's fees. id. See also Woods v. Herman Walldorf & Co., Inc., 26 S.W.3d 868 (Tenn. Ct. App. 1999). We think these cases mean that while Rule 68 is couched in mandatory terms, the costs it mandates are only those that are

9

referred to in Tenn. R. Civ. P. 54.04(1) and not the discretionary costs referred to in 54.04(2). Thus, parties that turn down an offer of judgment are in peril of having to pay part of the costs assessed by the clerk, even if they prevail at the trial.

Since the Rule 54.04(1) costs are already assessed against the Burtons by the final judgment, Rule 68 does not play any part in this appeal. So, the question is whether the trial judge abused his discretion by allowing only $400 in discretionary costs to the defendants?

The trial judge did not give any reasons for his action. But "trial courts are afforded a great deal of discretion when considering whether to award costs. Accordingly, absent a clear abuse of discretion, courts generally will not alter a trial court's ruling with respect to costs." Mix v. Miller, 27 S.W.3d 508 at 516 (Tenn. Ct. App. 1999). The unusual circumstances of this case may explain the trial judge's action. In any event, we do not think the trial judge abused his discretion.

The judgment of the court below is affirmed and the cause is remanded to the Circuit Court of Hamilton County for any further proceedings that may become necessary. Tax the costs on appeal to the appellants.

_____
BEN H. CANTRELL, JUDGE