## JOHN RONALD BLANKENSHIP, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

Court of Criminal Appeals of Tennessee. Dec. 18, 1967.

Certiorari Denied by Supreme Court Oct. 7, 1968.

J. Frank Hall, Memphis, for plaintiff in error.

George F. McCanless, Atty. Gen., of Tenn., Robert H. Roberts, Asst. Atty. Gen., Nashville, for defendant in error.

## OPINION

WALKER, Presiding Judge.

The defendant, John Ronald Blankenship, and a co-defendant were tried for robbery with a deadly weapon in

the Criminal Court of Shelby County on April 6, 1967, and the defendant was convicted and sentenced to ten years in the penitentiary. His co-defendant was acquitted. His motion for a new trial having been overruled and the verdict of the jury approved by the trial judge, he has perfected his appeal and assigned errors.

This is the second time that the defendant has been tried for this offense. He was convicted, along with two co-defendants, on March 31, 1964, and sentenced to twenty-five years in the penitentiary. That conviction was reversed by the Supreme Court and remanded for a new trial. 219 Tenn. 355, 410 S.W.2d 159.

At about 10:40 P.M. on November 11, 1963, two men armed with pistols entered the Deluxe Package Store in Memphis, announced that it was a hold-up and ordered the employee, William C. Kane, to get down on the floor. One of the men was masked and the other not. They held pistols on Mr. Kane and threatened to kill him. They left after taking about $300 from the cash register. A third man was outside in an automobile.

Mrs. Frances Hanan, who was living at the time with the defendant as his wife, testified that he had been drinking most of that day and had been with his co-defendants on that evening; that at about 11:00 P.M. he came home and told her that if any policemen inquired she should say that he had been there all night. About thirty minutes later, his co-defendants came, and they had a large amount of money on a bed. One of them explained that they had obtained this by gambling.

She further testified that later in the evening the defendant told her that they had robbed the Deluxe Pack-

age Store and described the robbery in detail. She says he told her that he had his teeth out, needed a shave and haircut and had on sunglasses, but the other co-defendant had a lady's stocking over his face. On the defendant's instructions, the following morning she brought one of the pistols from its place of concealment and left it in their apartment for one of the co-defendants. She also destroyed the coat the defendant was wearing at the time of the robbery. She was indicted as an accessory after the fact to the robbery.

The defendant was arrested in Kansas City on or about March 19, 1964. He waived extradition and was returned to Memphis.

In the first trial, which was later reversed for other cause, the State's witness, William C. Kane who was the victim of the armed robbery, testified that at a lineup held the day after this defendant was returned to Memphis he identified the defendant as being the number three man in the line-up. Mr. Kane had an operation for cataracts in August 1964 and had just received his glasses. His vision was blurred and he was unable to identify the defendant in the courtroom at the first trial.

On January 23, 1966, Mr. Kane died, at the age of seventy-five. His testimony was read in the second trial from the original transcript which had been certified to be correct by the trial judge and forwarded to the Supreme Court on appeal from the first trial.

In McBee v. State, 213 Tenn. 15, 372 S.W.2d 178, our Supreme Court held that:

Testimony at a first trial was properly introduced at a second trial where such testimony came from first trial

record certified to be correct by the trial judge and approved by counsel representing defendant at that time, and it was not necessary that such testimony be introduced by someone who heard it given in the original trial.

In Stubbs v. State, 216 Tenn. 567, 393 S.W.2d 150, the defendant was tried the second time for murder. One of the State's witnesses, a Mr. Holm, was a resident of Sweden at the time of the second trial. His testimony in the first trial and also that of a witness who had died since the first trial were introduced from the transcript of the first trial. In the second trial, three highway patrolmen and a police investigator testified that they were present when the defendant was taken into a hospital room occupied by Holm, and he identified the defendant as the man who had shot him and killed his wife. The defendant admitted that a man pointed his finger at him and said, "That is the one," while he was in a hospital room, but said that he did not know the identifier.

In his assignments of error, the defendant says that the Court erred in admitting certain evidence over his timely objection by reading from the transcript of the testimony of the witness William C. Kane at the first trial, as follows:

"They had me sit down in a chair bout three or four rows, four or five rows back of the line-up which they had these men on the stage out there in front. So that was back in the back, walked up there, I said three I think so, we walked up to the counter, in other words walked up to where the lights were and I pointed to number three and I say 'well that's the man right there.' "

He says this is incompetent and prejudicial because:

"1. It is hearsay evidence.

2. It is self-serving.

3. It has no probative value.

4. It was offered as substantive evidence of the truth of the matter asserted, not as corroboration of a courtroom identification.

5. At the point in the testimony when the subject testimony was given, there had been no attack on the credibility of the witness on the basis of a 'recent contrivance' or any other basis.

6. There was no showing of surprise of the prosecuting attorney at the state's witness' failure to identify Blankenship in the courtroom.

7. The act and utterance recounted by the witness occurred outside the sight, hearing and presence of the defendant, therefore the defendant has no means of knowledge with which to take an oath and deny the occurrence of said act and utterance, either at the trial or extrajudicially at the time of the purported act and utterance."

No objection was made to this testimony at the first trial and defendant's counsel in that trial cross-examined Mr. Kane fully, during which the following was asked and answered:

"Q. That you identified number three, is that right, you identified him as number three?

A. That's right."

The defendant contends that where a witness is un-

able to identify a defendant in the courtroom he may not testify that he made a prior identification at a line-up outside the sight and presence of the accused.

Evidence of a prior identification was held admissible in Mays v. State, 145 Tenn. 118, 238 S.W. 1096, and Stubbs v. State, supra.

In Colbert v. Commonwealth, 306 S.W.2d 825, 71 A.L.R.2d 442, the Court of Appeals of Kentucky said:

> "It appears that other jurisdictions are about equally divided on the question of the competency of testimony by a witness as to *his own* previous identification of the accused, with perhaps a tendency in the recent cases in favor of admissibility. See Annotation, 70 A.L.R. 910. Wigmore strongly argues in favor of admissibility. Wigmore on Evidence, Third Ed., sec. 1130. Wharton and Underhill also take the view that the evidence is admissible. Wharton on Criminal Evidence, Twelfth Ed., secs. 181, 182; Underhill's Criminal Evidence, Fifth Ed., sec. 127. These authorities, and the cases supporting their view, make no distinction between identification through photographs, as in a 'rogues' gallery,' and identification through a police line-up. However, they do point out that the conditions and circumstances under which the identification was made should be fair and be free of influences and suggestions calculated to induce a fancied recognition.

> \* \* \* \* \* \*

> "We hold that the testimony of the prosecuting witness, concerning his previous identification of the defendant, was competent."

In Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, footnote 3, the United States Supreme Court said:

"There is a split among the States concerning the admissibility of prior extrajudicial identifications, as independent evidence of identity, both by the witness and third parties present at the prior identification. See 71 A.L.R.2d 449. It has been held that the prior identification is hearsay, and, when admitted through the testimony of the identifier, is merely a prior consistent statement. The recent trend, however, is to admit the prior identification under the exception that admits as substantive evidence a prior communication by a witness who is available for cross-examination at trial. See 5 A.L.R.2d Later Case Service 1225-1228. That is the California rule. In People v. Gould, 54 Cal.2d 621, 626, 7 Cap.Rptr. 273, 275, 354 P.2d 865, 867, the Court said:

'Evidence of an extrajudicial identification is admissible, not only to corroborate an identification made at the trial (People v. Slobodion, 31 Cal.2d 555, 560, 191 P.2d 1), but as independent evidence of identity. Unlike other testimony that cannot be corroborated by proof of prior consistent statements unless it is first impeached * * * evidence of an extrajudicial identification is admitted regardless of whether the testimonial identification is impeached, because the earlier identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recognition in the witness' mind * * *. The failure of the witness to re-

peat the extrajudicial identification in court does not destroy its probative value, for such failure may be explained by loss of memory or other circumstances. The extrajudicial identification tends to connect the defendant with the crime, and the principal danger of admitting hearsay evidence is not present since the witness is available at trial for cross-examination.' "

In this case, the identifier, Mr. Kane, was cross-examined. As pointed out above, the majority of jurisdictions have decided in favor of the admission of such so-called extrajudicial identification, both as substantive and corroborative evidence. We are dealing here with testimony given by one who made the identification in the line-up and not with the testimony of one who merely heard such an identification being made. From all of his testimony, there is no reasonable doubt that he was identifying the defendant.

None of the defendant's objections to this testimony is good and we hold that, even though this witness did not make a courtroom identification, his extrajudicial identication is admissible.

The defendant next assigns as error the testimony of the State's witness, Lieutenant Gregg Murray, as follows:

"He got up, walked to the show-up box and he said,

'That's the man on number three.' "

The defendant says this is incompetent because:

"1. It is heresay evidence.

 2. It has no assertive value or testimonial force as to the truth of the matter asserted, but only cor-

roborative force to corroborate a courtroom identification or a prior extra-judicial identification that has been attacked as a 'recent contrivance.'

3. It is not original or substantive evidence of the identity of the accused as the guilty party.

4. The hearing and seeing recounted by the witness occurred outside the sight, presence and hearing of the defendant, therefore, the defendant has no means of knowledge with which to take an oath and deny said occurrence at the trial or extra-judicially and not under oath at the time of the purported utterance and act of pointing.

5. There was no identification of the defendant Blankenship as the man that robbed the witness Kane, therefore there was no identification to corroborate."

■ The defendant was identified by competent evidence. Mr. Kane testified that he identified the man on number three. Lieutenant Murray testified that the man on number three was the defendant, Blankenship. This is not hearsay.

This testimony of the officer was competent, not to prove the truth, dependability or accuracy of the identification, but to show the number assigned to the defendant in the line-up. The defendant testified that he was in the line-up.

As to the veracity and accuracy of the identification, Mr. Kane appeared at the first trial and was subject to cross-examination and thus the dangers the hearsay rule seeks to avoid were not present in this trial. See Com-

monwealth v. Johnson, 201 Pa.Super. 448, 193 A.2d 833.

In advance of the witness' testimony about the line-up, the defendant objected to any offer of evidence by him that Kane identified Blankenship or the use of the word "identified" on the grounds that this was an opinion of the witness and hearsay. Lieutenant Murray testified outside the presence of the jury, and the defendant argued that his testimony was hearsay and inadmissible. The Court sustained defendant's objection to the use of the word "identification" by the witness, but ruled that his other testimony was admissible. The defendant did not object to this ruling and did not object later to its introduction before the jury. He did not object to the statement now assigned as error at the time of its introduction.

 The trial judge was correct in his ruling that the officer could not testify that the prosecuting witness identified the defendant in the line-up. This was hearsay and was not competent. The defendant was unable to see or hear what was said or done at the line-up. This is a different situation from Mays v. State, supra, and Stubbs v. State, supra. In those cases, the identification was made in the sight and presence of the defendant, and he was fully aware of all that was said and done.

 The testimony of a third person as to a prior identification of the defendant by the victim is incompetent as original testimony, and, unless the witness has been impeached, is inadmissible on the issue of identification. Mr. Kane was not impeached.

The defendant cross-examined Lieutenant Murray on what occurred at the line-up and how the identification was made. He asked what Mr. Kane said at the line-up. Where testimony relating to identification of the defendant was elicited by the defendant's counsel, he is hardly in position to claim that testimony thereto was not admissible.

> "While a cross-examination, with regard to incompetent testimony admitted over the objection of counsel, may be made, without waiving the objection, we do not think the cross-examiner can have a witness embody such testimony in his cross-examination, and yet rely upon his original objection." Scott v. Union & Planters' Bank & Trust Co., 123 Tenn. 258, 287, 130 S.W. 757.

■■ This testimony was not challenged at the trial and we do not think there was error in its admission. In the absence of any objection at the time such evidence was offered, its admission cannot be complained of here. Vowell v. State, 207 Tenn. 598, 341 S.W.2d 735.

Regardless of this fact, we have considered this assignment. We think that Mr. Kane had identified the defendant by competent evidence and this testimony of the officer added little to the case against the accused.

■ The evidence of the guilt of the defendant was clear and overwhelmingly supports his conviction. It does not preponderate in favor of his innocence.

We find no error in the record and the judgment of the trial court is affirmed.

GILLIAM and OLIVER, JJ., concur.