553 A.2d 416

**COMMONWEALTH of Pennsylvania**

v.

**Hien Van DOA, Appellant.**

**COMMONWEALTH of Pennsylvania**

v.

**Dong TREN, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 7, 1988.

Filed Jan. 11, 1989.

Reargument Denied Feb. 16, 1989.

Daniel M. Preminger, Philadelphia, for appellant (at 3284).

Robert M. Waller, Philadelphia, for appellant (at 3347).

Laurie Magid, Assistant District Attorney, Philadelphia, for Com., appellee.

Before WIEAND, McEWEN and MELINSON, JJ.

MELINSON, Judge:

These are appeals from the Judgments of Sentence of the Court of Common Pleas of Philadelphia County in which Appellants, Dong Tren (hereinafter "Tren") and Hien Van Doa (hereinafter "Doa"), were sentenced to imprisonment as a result of their convictions on five counts of robbery, one count of conspiracy, and one count of possession of a weapon. We affirm.

At approximately 6:30 P.M. on 26 March 1986, several Vietnamese males entered a grocery store at 1354 Wagner Avenue, Philadelphia, Pennsylvania. The store was also a residence for a Vietnamese family. The males ordered Phoung Huynh, Anh Nguyen and Phouc Huynh, at gunpoint, to go upstairs to the kitchen in the residence. Chahn Huynh, who had been in the basement when he heard suspicious noises in the store, walked upstairs to investigate and was forced by the robbers to join the other members of the family in the kitchen. Thu Huynh, who had been asleep on the third floor, went downstairs, observed that her grandmother was lying on the first floor and saw the other members of her family in the kitchen. For fifteen (15) minutes, the males terrorized the family members at gun point, robbed them of their money, jewelry, car keys, food stamps, and checks. The robbers bound the hands and feet

of the family members with telephone cord and strips of clothing. The family, apparently fearing revenge from the robbers, waited until the following day to report the incident to the police. Further, when the incident was reported, the family notified the police that only their automobile was missing.

On 28 March 1986, Boston police received a tip from their operations division that two shotguns had been found by a maid in Room 120 of a Suisse Chalet motel in Boston, Massachusetts. Boston police observed Tren, Doa, and four other Vietnamese, including one female, entering Room 120 of the motel. A 1980 Buick Skylark with Pennsylvania tags, owned by the Huynhs, was seen in the adjacent parking lot. Boston detectives entered the room and searched the occupants. The detectives seized, among other things, the following items stolen from the Huynh family: a gold bracelet with a gold bell charm, a set of car keys, an automobile registration, a driver's license, food stamps, and bank checks. The last name on the driver's license was "Huynh." From Doa, another detective took a Seiko digital watch. The occupants were arrested on the charges, unrelated to the instant matter, of theft and unlawful possession of a firearm.

On 4 April 1986, Philadelphia Police Detective Eugene Wyatt interviewed the Huynhs and showed them a photographic array which included photographs of Tren and Doa. According to Detective Wyatt's testimony pursuant to a motion, made at trial, to suppress evidence, the family members made the following identifications: Thu Huynh, Anh Nguyen, Phoung Huynh identified Doa and Tren; Chahn Huynh identified Doa; and, Phouc Huynh either identified Doa or no one depending upon whether one believes Wyatt's testimony on direct examination or cross-examination. At the trial two days later, Wyatt testified similarly to his previous testimony except he suggested that Phouc Huynh identified Doa as one of the robbers.

From 8 December 1986 to 12 December 1986, a jury trial was conducted before the Honorable Angelo Guarino. The

defendants, Doa, Tren, and Su Le, were found guilty of criminal conspiracy, possession of an instrument of crime, and five counts of robbery. Post-trial motions were filed by the Appellants and were denied. Su Le absconded and his motions are still pending. On 4 November 1987, Doa and Tren were sentenced to terms of imprisonment by Judge Guarino. This timely appeal follows.

On appeal, Tren presents one issue and Doa raises five issues for our consideration. Both Tren and Doa allege that the trial court erred in permitting Detective Wyatt to testify to the substance of the victims' pre-trial photographic identifications. In addition, Van Doa presents four other issues for our consideration, set forth in his brief as follows:

B. Did not the lower court err in allowing the Commonwealth to present evidence of Phoung Huynh's identification at the preliminary hearing. [sic]

C. Did not the lower court err by misstating the evidence in its charge to the jury. [sic]

D. Did not the lower court err in failing to declare a mistrial when co-defendant Su Le testified in violation of Rule 305 of the Pennsylvania Rules of Criminal Procedure. [sic]

E. Did not the lower court improperly admit evidence of appellant's address. [sic]

Brief for Appellant at page 2.

I. Admissibility of Prior Photographic Identifications

■ First, we shall address whether the trial court erred in permitting Detective Wyatt to testify to the victims' pre-trial photographic identifications. As previously noted, Detective Wyatt testified that each of the family members identified Doa and/or Tren from photographic arrays shown to them nine days after the robbery. At the preliminary hearing, only Phoung Huynh and Thu Huynh took the witness stand. Phoung identified Doa as one of the robbers. She did not identify Tren. Thu identified Tren and Doa. At trial, the following identifications were made by

the family members: Thu and Phoung identified co-defendant Su Le, but were uncertain about Doa and Tren; Chahn was unable to identify any of the defendants, and he stated that he had been uncertain of his prior photographic identification; Anh identified Su Le, but flatly denied that Doa and Tren were involved in the robbery; Phouc could not recall whether any of the defendants were the robbers of his grocery.

Until recently, Pennsylvania adhered to the traditional rule that the prior inconsistent statements of a non-party witness are not admissible as substantive evidence under any circumstance. *See Commonwealth v. Waller*, 498 Pa. 33, 444 A.2d 653 (1982); *Commonwealth v. Gee*, 467 Pa. 123, 354 A.2d 875 (1976); *Commonwealth v. Tucker*, 452 Pa. 584, 307 A.2d 245 (1973). This principle was upheld by a sharply divided Pennsylvania Supreme Court in *Commonwealth v. Floyd*, 508 Pa. 393, 498 A.2d 816 (1985).

In *Floyd*, a Commonwealth witness, who was an eyewitness to a shooting, testified at trial that he gave a statement to the police shortly after the shooting when the events were fresh in his mind. Portions of the statement, including a description of the perpetrator which resembled the defendant, were read into evidence. The witness was unable to make an in-court identification of the defendant, and, in fact, stated that the defendant was not the gunman. No reference to a photographic identification was made by the witness during his testimony. Subsequently, the Commonwealth called a detective to the witness stand. He testified that he had shown the eyewitness a photographic array and that the eyewitness had selected a photograph of the defendant and identified him as the wrongdoer. The defendant was convicted and post-trial motions were denied.

On appeal, this court reversed the trial court and remanded the matter to the trial court for a new trial on the dual grounds that the photographic evidence was erroneously admitted by the trial court as substantive evidence and that the Commonwealth failed to disclose the photographic identification to the defendant before the trial.

A plurality[1] of the Pennsylvania Supreme Court affirmed the decision of this court and held that a

"witness may testify as to an identification made by another person if and only if such other person is present in court, is available for cross-examination, has testified, has been questioned about the previous identification, and has denied making it.... Applying *Waller* [*Commonwealth v. Waller*, 498 Pa. 33, 444 A.2d 653 (1982)], we hold that the evidence is admissible only for impeachment and not as substantive evidence."[2]

*Floyd*, 508 Pa. at 399, 498 A.2d at 819.

Since the decision in *Floyd*, the Pennsylvania Supreme Court has overruled a long line of cases in this Commonwealth by holding that prior inconsistent statements of a non-party witness at trial *are* admissible as substantive evidence under certain, undefined circumstances. *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986). Hence, the traditional rule utilized in *Floyd* is no longer the law of the Commonwealth.

In *Brady*, the defendant awakened his girlfriend and persuaded her to take a ride with him. After driving around for some time, the defendant ran the automobile into a ditch alongside the road. They were unable to extricate the automobile from the ditch. Consequently,

1. Five justices concurred in the result reached by the majority. Chief Justice Nix wrote a concurring opinion expressing the view that prior identification testimony can be admitted as substantive evidence in certain situations. Justice Larsen wrote a concurring opinion relating the identification testimony in *Floyd* to testimony concerning a prior inconsistent statement. He would permit the admission of such testimony for impeachment purposes. Justice Hutchinson espoused the traditional rule. Finally, two justices concurred in the result without comment.

2. *Commonwealth v. Waller*, 498 Pa. 33, 444 A.2d 653 (1982), is inapposite to this matter. *Waller* involved the Commonwealth's use of a prior inconsistent statement to impeach the testimony of the Commonwealth witness who made the pre-trial statement. The witness's testimony at trial was inconsistent with his testimony at a coroner's inquest. The issue did not concern the prior identification testimony of a third-party witness. Also, the viability of *Waller* is drastically undermined by the rationale set forth in *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986).

they began to walk back toward their home town, passing by a manufacturing plant along the way. They climbed over the fence surrounding the plant, entered the plant through a side door, and attempted to pry open a dollar-bill change machine. A fight ensued between the defendant and a security guard who encountered the two trespassers. During the fight, the security guard was stabbed. On that same evening, the girlfriend gave a tape-recorded statement to the police recounting the events of the day. At trial, the girlfriend, a Commonwealth witness, recanted her tape-recorded statements and testified that neither she nor the defendant entered the manufacturing plant. Over objection, the trial court permitted the Commonwealth to introduce the tape recorded statement as substantive evidence. Ultimately, a jury convicted the defendant on the charges of second degree murder, burglary, and criminal mischief.

A panel of this court, applying the " 'law in Pennsylvania that prior inconsistent statements of a non-party witness are not admissible as substantive evidence of the truth of the matter asserted,' " held that the trial court erred in admitting the girlfriend's tape-recorded statement as substantive evidence. *Brady*, 510 Pa. at 127, 507 A.2d at 68, *quoting Commonwealth v. Brady*, 338 Pa.Super. 137, 140, 487 A.2d 891, 892 (1985) (citations omitted).

The Pennsylvania Supreme Court, in reversing this court, held that the "otherwise admissible prior inconsistent statements of a [non-party] declarant who is a witness in a judicial proceeding and is available for cross-examination may be used as substantive evidence to prove the truth of the matters asserted therein." *Brady*, 510 Pa. at 131, 507 A.2d at 70. The court stated, in pertinent part:

"The availability of cross-examination at trial also assures a meaningful opportunity for the trier of fact to observe the declarant who has been called upon and sworn as a witness and questioned as to the discrepancy between the prior statement and the direct testimony. The trier of fact may bring to bear his or her sensory observations, experience, common sense and logic upon the witness to

assess credibility and to determine the truth and accuracy of both the out-of-court declarations and the in-court testimony."

*Brady*, 510 Pa. at 129, 507 A.2d at 69. Additionally, the court emphasized that hearsay concerns surrounding the admission of this type of evidence as substantive evidence are minimal when the declarant is present in court and available for cross-examination.

Since Pennsylvania adopted the modern rule in *Brady*, the appellate courts of this Commonwealth have not applied the principles espoused in *Brady* to a factual situation akin to the instant matter, i.e. where an eyewitness has made a prior identification but is unable to identify the defendants at trial and another witness is called to testify as to the eyewitness's prior identification.[3] Here, the victims of the robbery identified Doa and Tren in a photographic array but failed to identify them at trial. The Commonwealth called, as a witness, the police detective who showed the photographs to the victims. The police detective testified to the prior identifications made by the victims. Because we are presented with this unique situation, a careful analysis of the traditional hearsay concerns and the reasoning expressed in *Brady* and other jurisdictions is required for a proper resolution of this issue.[4]

**3.** The United States Supreme Court has recognized that
"There is a split among the States concerning the admissibility of prior extrajudicial identifications, as independent evidence of identity, both by the witness and third parties present at the prior identification. See 71 ALR2d 449. It has been held that the prior identification is hearsay, and, when admitted through the testimony of the identifier, is merely a prior consistent statement. The recent trend, however, is to admit the prior identification under the exception that admits as substantive evidence a prior communication by a witness who is available for cross-examination." (citations omitted).
*Gilbert v. California*, 388 U.S. 263, 272 fn. 3, 87 S.Ct. 1951, 1956 fn. 3, 18 L.Ed.2d 1178, 1186 fn. 3 (1967).

**4.** *Brady* has been cited as controlling authority in one Pennsylvania case. In *Commonwealth v. Mott*, 372 Pa.Super. 133, 539 A.2d 365 (1988), a defense witness testified at trial that she was knocked down by a man other than the defendant. During cross-examination, the witness admitted testifying at the preliminary hearing that she did not

Proponents of the traditional rule assert three general, interrelated premises for not permitting the use of prior inconsistent statements as proof of the truth of the matter asserted.[5]

"The concern was ... that hearsay problems arose from its introduction, that is, that the prior statement was too unreliable to be introduced as substantive evidence because the declarant had not been under oath or subject to punishment for perjury, because the declarant was not in the presence of the trier of fact, and because the declarant was not subject to cross-examination."

*Commonwealth v. Mott,* 372 Pa.Super. 133, 143, 539 A.2d 365, 370 (1988) (Cirillo, J., concurring), *citing Commonwealth v. Gee,* 467 Pa. 123, 134–135, 354 A.2d 875, 880 (1976); 3A Wigmore, *Evidence,* Section 1362; *State v. Whelan,* 200 Conn. 743, 752–753, 513 A.2d 86, 92 (1986). *See Commonwealth v. Brady,* 510 Pa. 123, 507 A.2d 66 (1986); McCormick, *Evidence,* Section 251 (3d. ed. 1984).[6] Ultimately, the *Brady* court stated that "each prong of this threefold rationale has been logically and thoroughly debunked

know who struck her. A panel of this court, applying *Brady,* held that the testimony was admissible. We noted that the prior statement "possessed superior indicia of reliability because it was made at a point in time closer to the event which took place" and, although not required, the previous statement was given while the declarant was under oath.

5. As of the date of this Opinion, there are only nine (9) states which have not adopted some form of the modern rule. *See* Note, *Substantive Admissibility of a Non–Party Witness' Prior Inconsistent Statements: Pennsylvania Adopts the Modern View,* 32 Vill.L.Rev. 471, 489 (1987).

6. Before *Brady,* the traditional rule received increasingly critical commentary from other members of Pennsylvania's appellate courts. *See Floyd,* 508 Pa. at 393, 399–405 (Nix, C.J., concurring) and 405–408, 498 A.2d 816 at 819–822 and 823–824 (Larsen, J., concurring); *Commonwealth v. Gee,* 467 Pa. at 136, n. 5, 354 A.2d at 880 n. 5 (Eagan, J., plurality opinion) and 467 Pa. 123, 143–146, 354 A.2d 875, 884–886 (Roberts, J., dissenting) ("[W]e should admit the prior inconsistent statements of witnesses as evidence concerning the matters contained in the statement."); *Commonwealth v. Thirkield,* 502 Pa. 542, 543, 467 A.2d 323, 324 (1983) (McDermott, J., dissenting) ("Limiting the admissibility of prior inconsistent statements to impeachment uses severely impedes the truth-determining process. The Court should address this issue and allow the use of such statements as substantive evidence.").

by the scholars and by the growing number of jurisdictions adopting the modern rule governing prior inconsistent statements on non-party witnesses by statute, rule or case law." *Brady*, 510 Pa. at 128, 507 A.2d at 69.[7]

Other jurisdictions have considered the admissibility of prior identifications generally and have concluded that they are admissible as substantive evidence over a hearsay objection in a wide variety of circumstances. *See United States v. Lewis*, 565 F.2d 1248 (2d Cir.1977), *cert. den.* 435 U.S. 973, 98 S.Ct. 1618, 56 L.Ed.2d 66; *State v. Kevil*, 111 Ariz. 240, 527 P.2d 285 (1974); *People v. Gould*, 54 Cal.2d 621, 7 Cal.Rptr. 273, 354 P.2d 865 (1960); *People v. Trujillo*, 189 Colo. 206, 539 P.2d 1234 (1975); *State v. Whelan*, 200 Conn. 743, 513 A.2d 86 (1986); *State v. Freber*, 366 So.2d 426 (Fla.1978); *Barriner v. State*, 161 Ga.App. 59, 289 S.E.2d 289 (1982); *State v. Naeole*, 62 Haw. 563, 617 P.2d 820 (1980); *People v. Miller*, 27 Ill.App.3d 667, 327 N.E.2d 8 (1975); *Johnson v. State*, 237 Md. 283, 206 A.2d 138 (1965); *Commonwealth v. Daye*, 393 Mass. 55, 469 N.E.2d 483 (1984); *State v. Harris*, 477 S.W.2d 42 (Mo.1972); *State v. Adail*, 555 S.W.2d 672 (Mo.App.1977); *State v. Draughn*, 121 N.J.Super. 64, 296 A.2d 79 (1972) *aff'd* 61 N.J. 515, 296 A.2d 68; *People v. Nival*, 33 N.Y.2d 391, 353 N.Y.S.2d 409, 308 N.E.2d 883 (1974); *State v. Blackwell*, 16 Ohio App.3d 100, 474 N.E.2d 671 (1984); *Washington v. State*, 568 P.2d 301 (Okla.Cr.1977); *State v. Fennell*, 7 Or.App. 256, 489

---

**7.** The Connecticut Supreme Court recently acknowledged that "This rule [traditional rule] has been criticized by many legal scholars and commentators who maintain that the oath is not as strong a guaranty of trustworthiness as it once may have been, and that the requirements that the jury observe the declarant and that the defendant have the opportunity to cross-examine are met where the declarant takes the stand and is subject to cross-examination." *Whelan*, 200 Conn. at 749–750, 513 A.2d at 90–91, *citing* McCormick, *Evidence*, Section 251 (3d ed. 1984); 3A Wigmore, *Evidence*, Section 1018 (Chadbourn Rev.1970); Graham, *Employing Inconsistent Statements for Impeachment and as Substantive Evidence*, 75 Mich.L.Rev. 1565 (1977); *see also* Mauet, *Prior Identifications in Criminal Cases: Hearsay and Confrontation Issues*, 24 Ariz.L.Rev. 29 (1982); Note, *Substantive Admissibility of a Non-party Witness' Prior Inconsistent Statements: Pennsylvania Adopts the Modern View*, 32 Vill.L.Rev. 471 (1987).

P.2d 964 (1971); *Blankenship v. State,* 1 Tenn.Crim.App. 178, 432 S.W.2d 679 (1967); *Niblett v. Commonwealth,* 217 Va. 76, 225 S.E.2d 391 (1976); *State v. Simmons,* 63 Wash.2d 17, 385 P.2d 389 (1963).

An increasing number of those jurisdictions have held that a non-party witness may testify at trial to an eyewitness's prior identification of the defendant in those instances when the eyewitness fails to, or is unable to, identify the defendant at trial. *See United States v. Lewis,* 565 F.2d 1248 (2nd Cir.1977) *cert. den.* 435 U.S. 973, 98 S.Ct. 1618, 56 L.Ed.2d 66; *United States v. Elemy,* 656 F.2d 507 (9th Cir.1981); *Rice v. United States,* 437 A.2d 582 (D.C. 1981); *State v. Kevil,* 111 Ariz. 240, 527 P.2d 285 (1974); *State v. Jackson,* 24 Ariz.App. 7, 535 P.2d 35 (1975); *People v. Gould,* 54 Cal.2d, 621, 7 Cal.Rptr. 273, 354 P.2d 865 (1960); *People v. Trujillo,* 189 Colo. 206, 539 P.2d 1234 (1975); *State v. Freber,* 366 So.2d 426 (Fla.1978); *Bedford v. State,* 293 Md. 172, 443 A.2d 78 (1982); *State v. Barela,* 97 N.M. 723, 643 P.2d 287 (App.1982); *State v. Draughn,* 121 N.J.Super. 64, 296 A.2d 79, *aff'd* 61 N.J. 515, 296 A.2d 68 (1972); *State v. Fennell,* 7 Or.App. 256, 489 P.2d 964 (1971); *Lucas v. State,* 160 Tex.Crim. 443, 271 S.W.2d 821 (1954); *Niblett v. Commonwealth,* 217 Va. 76, 225 S.E.2d 391 (1976).

The seminal case is *People v. Gould,* 54 Cal.2d 621, 7 Cal.Rptr. 273, 354 P.2d 865 (1960). In *Gould,* an eyewitness identified the defendant from a photographic array, but she was unable to identify him at trial. A police officer subsequently testified that the eyewitness had previously identified the defendant. Justice Traynor writing for a unanimous California Supreme Court said as follows:

"Evidence of an extra-judicial identification is admissible, not only to corroborate an identification made at the trial [citations omitted], but as independent evidence of identity. Unlike other testimony that cannot be corroborated by proof of prior consistent statements unless it is first impeached [citations omitted], evidence of an extrajudicial identification is admitted regardless of whether the testi-

monial identification is impeached, because the earlier identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recognition in the witness' mind. [citations omitted]. The failure of the witness to repeat the extrajudicial identification in court does not destroy its probative value, for such failure may be explained by loss of memory or other circumstances. The extrajudicial identification tends to connect the defendant with the crime, and the principal danger of admitting hearsay evidence is not present since the witness is available at the trial for cross-examination." [citations omitted].

*Gould,* 54 Cal.2d at 631, 7 Cal.Rptr. at 278, 354 P.2d at 870. We find that the rationale expressed by legal commentators and other jurisdictions which have followed *People v. Gould,* 54 Cal.2d 621, 7 Cal.Rptr. 273, 354 P.2d 865 (1960), and its progeny is not only persuasive, but compelling.

First, the *Gould* court cogently concluded that the identification made, in most instances, very close in time to the occurrence of the event in question is of superior reliability. There is a greater likelihood that the identification rendered soon after a crime has been committed may be more objective and accurate and possess greater probative value than a subsequent in-court identification. *Niblett v. Commonwealth,* 217 Va. 76, 82, 225 S.E.2d 391, 394 (1976); *see Brady,* 510 Pa. at 130, 507 A.2d at 69 ("Moreover, the prior statement can be viewed as possessing superior indicia of reliability as it was rendered at a point in time closer to the event described ... when memory will presumably be fresher and opportunity for fabrication lessened."); *State v. Harris,* 711 S.W.2d 881, 885 (Mo.App.1986) ("The reasons for admitting identification statements as substantive evidence are that out-of-court identifications are believed to be more reliable than those made under the suggestive conditions prevailing at trial ..."); *State v. Naeole,* 62 Haw. 563, 569, 617 P.2d 820, 825 (1980) ("Such pretrial identification is usually conducted as soon after the commission of the

offense as possible, and this closer relationship ... affords less opportunity for the deterioration or fading of eye-witness impressions ..."); *Commonwealth v. Daye*, 393 Mass. 55, 61, 469 N.E.2d 483, 488 (1984) ("Prior identifications are admissible as probative evidence notwithstanding their hearsay attributes because of the superior probative worth of an identification made closer in time to the events in question."). Pursuing this line of logic, "Congress has recognized, as do most trial judges, that identification in the courtroom is a formality that offers little in the way of suggestibility. The experienced trial judge gives much greater credence to the out-of-court identification." *United States v. Lewis*, 565 F.2d at 1251, *citing* 4 Weinstein's Evidence, 801–103. The hearsay rule is replete with exceptions which rely heavily upon the freshness of a declarant's memory as a prevailing indicia of reliability. Even those persons who most vigorously oppose the admissibility of prior identification evidence are hard-pressed to rebut the proposition that the passage of time dilutes the memory.

In addition, "it is not beyond the realm of possibility that an identifying witness may be inhibited by threat or intimidation from making a positive in-court identification, or, the appearance of the alleged perpetrator may have changed since the date of the offense." *Niblett*, 217 Va. at 82, 225 S.E.2d at 394; *see Naeole*, 62 Haw. 563, 617 P.2d 820; *see United States v. Marchand*, 564 F.2d 983, 996 (2nd Cir. 1977) ("[T]he purpose of the rule [Federal Rule of Evidence 801(d)(1)(c) ] was to permit the introduction of identifications made by a witness when memory was fresher and there had been less opportunity for influence to be exerted upon him.").

Here, the victims have repeatedly testified that they have feared revenge since the date of the robbery. The admission of prior identifications, made shortly after the event in question, as substantive evidence would virtually eliminate the opportunity for corrupt persons to silence the voices of potential witnesses through coercion, intimidation, or force. And, it would prevent the sands of time from drifting over

the eyes and memory of a witness, converting a once clear scene into an amorphous blur at trial. The prior statements of identification would be admitted into evidence, as they were in this instance, by the testimony of reliable persons more impervious to the persuasions of those who seek to violate the sanctity of the judicial truth finding process by hindering a witness from giving honest and complete testimony.

Second, critics of the modern rule express the important concern that defendants may be convicted upon the unsworn testimony of a witness. It is conceded that the modern rule permits the admission of prior inconsistent statements uttered while the declarant is not under oath. However, we are unconvinced that this is necessarily a flaw fatal to the admission of the testimony in the case at bar. The eyewitness who takes the witness stand is obligated to tell the truth under penalty of perjury. The eyewitness may or may not be able to make an in-court identification. But, if the evidence of the eyewitness's prior identification is introduced via the eyewitness's own testimony or through another witness's testimony, the eyewitness remains legally bound to testify to the veracity and accuracy of the prior identification if requested to do so upon direct or cross-examination. The same safeguard is extant when another witness testifies to the content of the eyewitness's prior identification. Just as the eyewitness is compelled to tell the truth, the other witness must truthfully narrate the substance of the prior identification. If the accounts of the two witnesses vary, the factfinder may accept or dismiss any portion of either witness's testimony.

Third, inextricably intertwined with the aforementioned hearsay concerns is Appellant's allegation that the admission of the police detective's testimony violates the Confrontation Clause of the United States Constitution. The nation's highest court has recognized that there exists a partial overlap between the requirements of the hearsay rule and the Confrontation Clause of the Sixth Amendment of the United States Constitution, i.e. the right of an ac-

cused "to be confronted with the witnesses against him." *United States v. Owens*, 484 U.S. 554, ——, 108 S.Ct. 838, 843, 98 L.Ed.2d 951, 956 (1988); *see* U.S. Const. amend. VI. In *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), Justice Blackmun, writing for the majority, stated:

> "The [Confrontation] Clause envisions 'a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.'"

*Roberts*, 448 U.S. at 63–64, 100 S.Ct. at 2537–2538, *citing Mattox v. United States*, 156 U.S. 237, 242–243, 15 S.Ct. 337, 339, 39 L.Ed. 409, 411 (1895).[8] We believe that a defendant has ample opportunity to challenge the accuracy and the credibility of a prior identification when "the hearsay declarant is present at trial and subject to unrestricted cross-examination." *Owens*, 108 S.Ct. at 843;[9] *see Califor-*

---

**8.** "From the scant information available it may tentatively be concluded that the Confrontation Clause was meant to constitutionalize a barrier against flagrant abuses, trials by anonymous accusers, and absentee witnesses. That the Clause was intended to ordain common law rules of evidence with constitutional sanctions is doubtful.... Rather, having established a broad principle, it is far more likely that the framers anticipated it would be supplemented, as a matter of judge-made common law, by prevailing rules of evidence." *California v. Green*, 399 U.S. 149 at 179, 90 S.Ct. 1930, 1946, 26 L.Ed.2d 489 (1970). (Harlan, J., concurring).

**9.** In *Owens*, the victim suffered a fractured skull in a beating administered by the defendant. Consequently, his memory was severely impaired. Approximately one month after the attack, the victim identified the defendant from a photographic array. At trial, the victim testified that he had previously identified the defendant from a photographic array. However, on cross-examination, he testified that he could not remember seeing his assailant, could not recall any of his visitors at the hospital except the detective who showed the photographic array, and could not remember whether any of his other visitors had suggested that the defendant had been the assailant.

The defendant's conviction was reversed by the Ninth Circuit Court of Appeals on the grounds that the conviction violated the Confrontation Clause and Rule 802 of the Federal Rules of Evidence. The

*nia v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); *Brady,* 510 Pa. at 131, 507 A.2d at 70.

Here, the five eyewitnesses were present in court and were available for cross-examination. "The Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " *Owens,* 108 S.Ct. at 842, *citing Kentucky v. Stincer,* 482 U.S. 730, 739, 107 S.Ct. 2658, 2664, 96 L.Ed.2d 631, 643 (1987), *quoting Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15, 19 (1985) (per curiam). Four of the five eyewitnesses testified that they had viewed photographic arrays. One of the witnesses was not examined on this point. Two of the eyewitnesses testified that they had identified persons from the photographic array. The other two eyewitnesses stated that they were uncertain of their prior identifications. The opportunity was available for Appellants' counsel to use the tool of cross-examination to unearth the very foundations of the eyewitnesses' prior identifications and, later, the immediate ability of the police detective to accurately recall the prior identifications made by the victims. Counsel for Appellants chose not to cross-examine the eyewitnesses regarding their prior identification testimony. We shall not deem erroneous the trial court's decision to admit the testimonial evidence merely because Appellants' counsel failed to conduct a successful cross-examination.

Further, we mention that the police detective testified *after* the five victims failed to make an in-court identification. Appellants had the opportunity to cross-examine the police detective regarding his recollections of the prior identifications made by the victims. Consequently, the jury was able to assess the credibility and solidity of the prior identifications and attribute whatever weight it desired to the sum of the evidence placed before it. Moreover, once the police detective concluded his testimony, Appellants

Supreme Court reversed the decision of the Circuit Court holding that the conviction did not violate the Confrontation Clause.

could have sought to recall some or all of the five eye-witnesses, including the eyewitness who had not previously been asked whether she viewed a photographic array, to impeach the credibility of the police detective. Each eyewitness could have been called upon to adopt, explain, or disavow the testimony of the police detective. Then, the trier of fact would have been able to assess the totality of the evidence in rendering its verdict.[10]

We must conclude there is no constitutional barrier to prohibit the admission of the prior identification in the present case. Justice Scalia, writing for the majority in *Owens,* stated:

> "We do not think such an inquiry [into the "indicia of reliability" of the victim's testimony] is called for when a hearsay declarant is present at trial and subject to unrestricted cross-examination. In that situation, as the Court recognized in Green [*California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)], the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness's demeanor satisfy the constitutional requirements."

*Owens,* 108 S.Ct. at 843.

We now turn to a consideration of the reliability of the identification testimony. Reliability is the linchpin in determining the admissibility of identification testimony, and even if the identification procedure itself was suggestive, so long as the challenged identification itself is reliable, it is admissible. *State v. Blackwell,* 16 Ohio.App.3d 100, 103–104, 474 N.E.2d 671, 675 (1984), *citing Manson v. Brath-*

10. "The witness who now relates a different story about the events in question must necessarily assume a position as the truth value of his prior statement, thus giving the jury a chance to observe and evaluate his demeanor as he either disavows or qualifies his earlier statement. The jury is alerted by the inconsistency in the stories, and its attention is sharply focused on determining either that one of the stories reflects the truth or that the witness who apparently lied once, is simply too lacking in credibility to warrant its believing either story. The defendant's confrontation rights are not violated, even though some demeanor evidence that would have been relevant in resolving this credibility issue is forever lost." *California v. Green,* 399 U.S. at 160, 90 S.Ct. at 1936.

*waite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *see Commonwealth v. Ferguson,* 327 Pa.Super. 305, 475 A.2d 810 (1984);. It is well established that the display of a photographic array to a potential witness is a permissible method for attaining the pretrial identification of a suspect. *See Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *United States v. Owens,* 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988); *Commonwealth v. Harris,* 479 Pa. 131, 387 A.2d 869 (1978). In *Simmons,* the Supreme Court stated the following with respect to determining the admissibility of pre-trial photographic identifications:

> "Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on missidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement."

*Simmons,* 390 U.S. at 384, 88 S.Ct. at 971. Further, the Supreme Court has declined to adopt the principle that because of the mere possibility of suggestive identification procedures, out-of-court statements of identification are inherently less reliable than other out-of-court statements. *Owens,* 108 S.Ct. at 843.

In the case *sub judice,* Tren and Doa have not asserted that the underlying source for the prior identification, the photographic array, was suggestive. We shall not review, *sua sponte,* the propriety of the trial court's decision not to suppress the prior identifications made by the victims.

There is no evidence in the record, nor allegation in the Appellants' briefs, that the prior identifications were not rendered voluntarily, knowingly, and intelligently or, were based upon a suggestive photographic array. If there had been evidence that the prior identifications were not given voluntarily, knowingly, and intelligently or that the procedure was tainted, the veracity and the utility of the prior identifications would be seriously undermined.

Lastly, we shall not affirm the convictions based solely upon the extra-judicial identification. *See Gould,* 54 Cal.2d at 630–631, 7 Cal.Rptr. at 278, 354 P.2d at 870. There is a plethora of other evidence linking the Appellants to the crime. Appellants were arrested in Boston. An inventory search made at the time of arrest uncovered numerous items, including their automobile, which were stolen from the Huynh family. At trial, Boston detectives identified Appellants as two of the persons arrested. Additionally, co-defendant Su Le did not identify the Appellants in court, but he did state that two of the robbers were from Virginia. Appellants are from Virginia.

II. Admissibility of Preliminary Hearing Identification

Doa presents three challenges to the admissibility of Phoung Huynh's identification of Doa made at the preliminary hearing. At trial, the Commonwealth called Assistant District Attorney Patrick Harvey to testify to Phoung's identification made at the preliminary hearing. In response, Doa has reiterated his general attack upon the admissibility of prior identifications as substantive evidence of the truth of the matter asserted. For the reasons set forth in our discussion of the first issue, we find that the trial court did not err in admitting the testimony.

Next, Doa insists that Phoung's testimony at trial was not inconsistent with her testimony at the preliminary hearing; therefore, it was inadmissible. We disagree. At the preliminary hearing, Phoung was asked by the prosecutor to make an in-court identification and she did so. At trial, she was unable to identify Doa. Such testimony is patently at variance with her earlier testimony.

Beyond this, Doa maintains that the Assistant District Attorney was not permitted to testify in the case on behalf of the Commonwealth because of his prior participation in the prosecution of the charges against Doa at the preliminary hearing stage. Harvey did not serve in the dual capacity of advocate and witness at the trial. He appeared only as a witness. In light of *Commonwealth v. Willis*, 380 Pa. 555, 552 A.2d 682 (1988) (en banc), we hold that the trial court did not err in allowing Harvey to testify.

### III. Jury Charge

Doa contends that the trial judge misstated the evidence to the jury by charging the jury that the victims testified that Doa was one of the robbers. In reviewing a jury charge for prejudicial and reversible error, we must read the charge as a whole; error cannot be predicated on isolated excerpts of the charge. *Commonwealth v. Long*, 367 Pa.Super. 190, 196, 532 A.2d 853, 856 (1987); *Commonwealth v. Woodward*, 483 Pa. 1, 394 A.2d 508 (1978). The jury charge read as follows:

One of the principle issues in this case as to the defendant Hien Doa and Dong Tren ... were they the persons who committed the crime?

Now, as I stated to you earlier or just a moment ago, the Commonwealth has to prove identification, identity of an accused as the perpetrator of a crime like any other essential element of the Commonwealth's case must be proved to your satisfaction beyond a reasonable doubt. But identity like any other fact at issue may be sufficiently established by direct evidence in the form of eyewitness who saw the incident occur or/and, by a web of circumstances sufficiently convincing to tie the defendants to the crime.

By way of eyewitnesses, the Commonwealth has presented witnesses who were there, who saw, who felt. By way of direct evidence, eyewitness, they have presented these witnesses and your memory as to the evidence controls. You have to assess the credibility of these witnesses, so in assessing the value of an identifying

witness testimony, you consider two things: one, the general credibility of that witness—we just went over that. General credibility, you apply the standards, and two, you go further, the basis upon which the identification is made by the witness.

In this case, therefore, you must first determine whether you believe these eyewitnesses. If you don't, then you will disregard their testimony that these two defendants were the persons present and perpetrated the crime. If, on the other hand, you believe these witnesses generally, then you will consider the basis upon which they make the identification. You will consider their ability to observe ... we'll consider the lapse of time between the criminal incident and the first time they make the identification.

On the other hand, if you find that the witness is not in a position to clearly observe or that those witnesses were not positive as to identification, or that their positive statements as to identity are weakened by qualifications or by failure to identify the defendants on one or more prior occasions, then the accuracy of identification is doubtful and you should receive that testimony with circumspection, with great care.

Notes of Testimony, 12/12/86, pages 19–22.

The eyewitnesses made prior identifications, of varying certainty, from the photographic array and at the preliminary hearing. The trial court instructed the jury to carefully review the identification testimony presented at the trial. The trial court did not state that the eyewitnesses made in-court identifications. The court merely summarized the identification evidence presented to the jury through the testimony of the eyewitnesses, Detective Wyatt, Patrick Harvey, and the Boston detectives. Accordingly, we find that the trial court did not misstate the evidence in its charge to the jury.

### IV. Violation of Pennsylvania Rule of Criminal Procedure 305

Doa argues that the Commonwealth violated Rules 305(B)(1)(d), 305(B)(2)(c), and 305(D) of the Pennsylvania

Rules of Criminal Procedure by failing to provide the defense with statements and identifications made by co-defendant Su Le. Rule 305(B)(1)(d) reads, in pertinent part:

**Rule 305. Pretrial Discovery and Inspection**

**B. Disclosure by the Commonwealth**

(1) Mandatory: ... the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information....

(d) the circumstances and results of any identification of the defendant by voice, photograph, or in-person identification; ...

(2) Discretionary with the Court: In all court cases, except as otherwise provided in Rule 263 ..., if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable: ...

(c) all written or recorded statements, and substantially verbatim oral statements, made by co-defendants, and by co-conspirators or accomplices, whether such individuals have been charged or not; ...

Pa.R.Crim.P. 305(B)(1)(d) and 305(B)(2)(c). Doa's attack is two-pronged. First, he asserts the Commonwealth knew that Su Le would identify Doa as a robber at the trial. Second, Doa avers that he would have moved for a severance had Su Le's prior statements been known to him prior to trial.

Initially, neither the docket entries nor the record reflect that Doa filed a motion for pretrial discovery requesting any statements made by his co-defendants. In the absence of a motion, Doa neglected to demonstrate to the court that it was necessary for his defense to review any statements potentially made by his co-defendants pursuant to Rule 305(B)(2)(c). Thus, the Commonwealth has not violated Rule 305(B)(2)(c).

However, we must review Doa's claim that the Commonwealth violated Rule 305(B)(1)(d). Upon cross-examination, Su Le, testifying in his own behalf, was asked by the Assistant District Attorney, "Who are these men [the robbers]? Are they here today?" Su Le responded, "Their hair was different then, can I identify them from the picture?" Doa's counsel immediately objected to this testimony. In his brief, Doa characterizes this exchange as tantamount to an in-court identification of the defendants. We are not persuaded by this interpretation. Su Le, in fact, was unable to make an in-court identification. Otherwise, he would not have sought to make an identification from photographs rather than in-court. Further, Su Le's pre-trial identification and statement were not admitted into evidence or referred to at the trial. Thus, any inadvertent omission of the Commonwealth in providing Su Le's pre-trial identification and statements was so insignificant in this case as to be harmless. Doa has failed to establish that he was sufficiently prejudiced to warrant a new trial.

Next, Doa claims that if he had been aware of Su Le's ability and intent to identify Doa, he would have moved for a severance on the grounds that the defendants had antagonistic defenses. The decision whether to sever the trials of co-defendants rests within the sound discretion of the trial judge and will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. Patterson*, 519 Pa. 190, 196–197, 546 A.2d 596, 599 (1988); *Commonwealth v. Morales*, 508 Pa. 51, 61, 494 A.2d 367, 372 (1985); *Commonwealth v. Thomas*, 346 Pa.Super. 11, 19, 498 A.2d 1345, 1349 (1985). "A joint trial of co-defendants is 'advisable when the crimes charged grew out of the same acts and much of the same evidence is necessary or applicable to both defendants.'" *Id.*, 346 Pa.Super. at 19, 498 A.2d at 1349, *citing Morales*, 508 Pa. at 61, 494 A.2d at 372. The probability of antagonistic defenses is a factor that a trial court must consider in deciding whether to grant a severance. *Morales*, 508 Pa. at 62, 494 A.2d at 373. The defendants must show real potential for prejudice and not

mere speculation. *Patterson,* 519 Pa. at 197, 546 A.2d at 599.

■ At trial, Su Le's defense was that he was merely present at the robbery. Doa's defense was that he was not present at the robbery. Su Le's counsel informed counsel for Doa that Su Le would testify in his own defense, but he was not certain what Su Le would say about Doa. Doa's counsel did not move for severance when Su Le took the stand to testify. Doa's counsel should have anticipated that Su Le might testify as to the identity of the robbers, or at the very least, testify to the facts of the robbery, thereby possibly implicating Doa. Moreover, Su Le did not, at trial, identify Doa as one of the robbers. Once again, we believe that Doa suffered no prejudice as a result of the inadvertent failure to provide Su Le's statement and prior identification. We find that the trial court did not abuse its discretion in refusing to grant the belated motion for severance.

V. Admissibility of Evidence of Van Doa's Address

■ Finally, Doa contends that the trial court erred in admitting the testimony of Detective Wyatt regarding Van Doa's address in Virginia. The admissibility of evidence is within the sound discretion of the trial judge and will not be reversed on appeal absent an abuse of discretion. *Commonwealth v. Osborn,* 364 Pa.Super. 505, 528 A.2d 623 (1987); *see In the Interest of Hyduke,* 371 Pa.Super. 380, 538 A.2d 66 (1988). Evidence is admissible provided that its probative value outweighs its prejudicial impact. *Commonwealth v. Hill,* 340 Pa.Super. 155, 489 A.2d 889 (1985). "The inquiry therefore is whether the evidence is so prejudicial that it 'may inflame' the jury to make a decision based upon 'something other than the legal propositions relevant to the case.' " *Commonwealth v. Conway,* 368 Pa.Super. 488, 494, 534 A.2d 541, 544 (1987), *citing Commonwealth v. Shain,* 324 Pa.Super. 456, 464, 471 A.2d 1246, 1249 (1984).

The testimony regarding Doa's address was relevant to explain the victims' difficulty in identifying him, a person

unknown to the victims prior to the robbery. Accordingly, Doa's final claim is without merit.

Judgments of Sentence affirmed.